**Cheryl AHEARN, et ux., Plaintiffs-Appellants,**

v.

**LAFAYETTE PHARMACAL, INC., et al., Defendants-Respondents.**

No. 52000.

Missouri Court of Appeals, Eastern District, Division Three.

March 17, 1987.

Motion for Rehearing and/or Transfer Denied April 23, 1987.

Application to Transfer Denied June 16, 1987.

Fred Roth, Clayton, for plaintiffs-appellants.

Evans & Dixon, Eugene Buckley & John F. Cooney, St. Louis, for defendants-respondents, Lafayette Pharmacal, Inc., Lafayette Pharmacol, Alcon Pharmaceutical Laboratories Corp., Alcon Pharmaceutical Laboratories, Inc.

Herzog & Burroughs, Thomas L. Burroughs, St. Louis, for defendant-respondent, Eastman Kodak.

Riethmann & Soebbing, John Sanders, St. Louis, for defendant-respondent, Thomson CGR Medical Corp.

Godfrey, Vandover & Burns, Dennis Burns, St. Louis, for defendant-respondent, Siemens Medical Systems, Inc.

Brinker, Doyen & Kovacs, Paul Kovacs, St. Louis, for defendant-respondent, University Drug Co.

Amelung, Wulff & Willenbrock, Robert Wulff, St. Louis, for defendant-respondent, Picker Intern.

Shepherd, Sandberg & Phoenix, P.C., G. Keith Phoenix, St. Louis, for defendant-respondent, American Hosp. Supply Corp.

CRANDALL, Judge.

This is an appeal by plaintiffs,[1] Cheryl Ahearn and Arthur Ahearn, her husband, from the grant of summary judgment, in a products liability action, in favor of defendants, Lafayette Pharmacal, Inc.; Lafayette Pharmacol, Inc.; Alcon Pharmaceutical Laboratories, Inc.; Alcon Pharmaceutical Laboratories Corp.; Thomson CGR Medical Corp.; Siemens Medical Systems, Inc.; University Drug Co.; Picker International; American Hospital Supply Corp.; and Eastman Kodak Co. We conclude that plaintiff's action is barred by the statute of limitations, § 516.120 RSMo (1986) and we therefore affirm the judgment of the trial court.

The standard of appellate review in a summary judgment proceeding has been oft-stated and need not be repeated in this opinion. *See, e.g., First Nat'l Bank of St. Charles v. Chemical Products, Inc.,* 637 S.W.2d 373, 375 (Mo.App.1982). We consider the record in light of that standard.

Plaintiff began experiencing chronic back problems in 1972, when she was injured in a work-related accident. In 1974, plaintiff again injured her back in an automobile accident. For diagnostic purposes, myelograms were performed on plaintiff on three separate occasions; in 1972, in 1973, and in 1975. The procedure for the myelograms involved the injection of dye into plaintiff's spinal canal and the taking of an x-ray. Pantopaque was the name of the iodine based contrast medium (dye) which was commonly used in performing myelograms during that period of time.

---

1. Arthur Ahearn's action against defendants is derivative to his wife's cause of action. Although there are two plaintiffs in the present action, we hereinafter use the term plaintiff in its singular form to facilitate an understanding of the facts and issues on appeal.

Surgery was performed on plaintiff's back in 1972 to remove two discs and again in 1975 to remove a blockage of scar tissue from her spine. According to hospital records, after the 1975 surgery, plaintiff's condition was diagnosed as adhesive arachnoiditis.

Plaintiff was unaware of the diagnosis of arachnoiditis until late 1981 or early 1982, when she was informed by her treating physician, Dr. Everett Lerwick, that the trauma of her two prior accidents had caused her condition. In his statement submitted to the trial court, Dr. Lerwick said: "[T]here would be no way for the plaintiff, Cheryl Ahearn, to know that she had arachnoiditis from anything other than ... trauma."

In 1982, Dr. Michael Winer examined plaintiff for consultation purposes and wrote in his evaluation: "Etiology of arachnoiditis initially relates probably to the trauma, previous surgery and possibly secondary to the previous myelography. It is uncertain which dye was used for myelography, although any of those in use in 1970 were associated with arachnoiditis." In June, 1983, plaintiff had occasion to view all of her medical records. Upon reading Dr. Winer's report, she first became aware of the causal connection between the condition of adhesive arachnoiditis and the use of pantopaque in myelograms.

On November 2, 1984, plaintiff and her husband, Arthur Ahearn, filed suit in state court. That action was removed to federal court and was subsequently dismissed in 1985. The present action was refiled on December 11, 1985.

Section 516.120 provides for a five year statute of limitations for plaintiff's action. The time from which that statute starts to run or the action accrues is controlled by § 516.100 RSMo (1986). The pertinent language of that statute is as follows: "[T]he cause of action shall not be deemed to accrue when the wrong is done or the technical breach of contract or duty occurs, but when the damage resulting therefrom *is sustained and is capable of ascertainment....*" (emphasis added).

Cases interpreting the "capable of ascertainment" test have applied an objective standard. *See Jepson v. Stubbs*, 555 S.W.2d 307, 312–13 (Mo. banc 1977); *Anderson v. Griffin, Dysart, Taylor, Penner & Lay, P.C.*, 684 S.W.2d 858, 861 (Mo. App.1984). In *Janssen v. Guaranty Land Title Co.*, 571 S.W.2d 702, 705 (Mo.App. 1978), this court held that: "The test to determine when a cause of action has accrued is to ascertain the time when plaintiff could have first maintained the action to a successful result." Plaintiff's ignorance of his cause of action will not prevent the running of the statute. *Chemical Workers Basic Union v. Arnold Savings Bank*, 411 S.W.2d 159, 165 (Mo. banc 1966).

In the instant case, plaintiff did not file this action until 1984. She did not learn of the causal relationship between the drug and the disease until 1983. Although she was aware of the nature of her condition, she was unaware of its name. Further, she had been led to believe that the cause of her disease was the trauma suffered in her two prior accidents. We note that plaintiff has not alleged that there was any collusion between her treating physicians and the defendants in the present action.

It is clear from the record that plaintiff's condition manifested itself in 1975. Although plaintiff may not have learned that this condition could have been caused by pantopaque until 1983, the medical community, as early as the 1940's, was aware of the possible causation link between arachnoiditis and the use of pantopaque in myelography. *See, e.g., King v. Nashua Corp.*, 763 F.2d 332, 333 (8th Cir.1985). There was considerable literature available to the medical community which suggested this causal connection. This is not a situation where the causation link between the disease and the drug had not been established at the time plaintiff became aware of her injury. *Compare Renfroe v. Eli Lilly & Co.*, 686 F.2d 642 (8th Cir.1982).

█ Here, plaintiff's damage was sustained and was capable of ascertainment in 1975, when she was diagnosed as suffering from arachnoiditis. It is immaterial that, at that time, she knew neither the identity

of the defendants nor the precise name and the possible etiology of her condition. That pantopaque was a possible cause of her condition was capable of ascertainment in 1975. The statute of limitations commenced running in 1975 and expired in 1980. Plaintiff's cause of action, which was initiated in 1984, is therefore barred by § 516.120.

Plaintiff next contends that § 516.200 RSMo (1986) tolled the statute of limitations as to certain defendants in this case. Section 516.200 provides:

> If at any time when any cause of action herein specified accrues against *any person who is a resident of this state*, and he is absent therefrom, such action may be commenced within the times herein respectively limited, after the return of such person into the state; and if, after such cause of action shall have accrued, such person depart from and reside out of this state, the time of his absence shall not be deemed or taken as any part of the time limited for the commencement of such action.

(emphasis added). Plaintiff claims that "manufacturers, Lafayette and Alcon, were not residents of Missouri and could not be personally served in Missouri with process."

By its terms, the tolling statute, § 516.200, is applicable when a *resident* is absent from the state or when he departs out of the state and resides elsewhere. The record does not indicate that these defendants were, in fact, ever residents of Missouri. Section 516.200 is therefore not applicable to the present action.

Additionally, a general statute of limitations is not tolled under § 516.200 when the defendant is subject to personal service in another state under the Missouri long-arm statute, § 506.500 RSMo (1986). *Bethke v. Bethke*, 676 S.W.2d 46, 48 (Mo. App.1984). Without reaching the issue of whether these two defendants were amenable to service under the long-arm statute, there is no evidence in the record that the courts of this state could not acquire effective jurisdiction over these defendants.

Finally, University Drug Co. filed a supplemental brief in which they allege that, as a matter of fact, they never supplied pantopaque to the hospitals where plaintiff was treated. This fact is supported by the record before us and is uncontradicted by plaintiff. The trial court's grant of summary judgment was therefore proper as to University Drug Co. for the additional reason that plaintiff failed to establish a causal relationship between University Drug Co. and the drug which caused the injury.

The judgment of the trial court is affirmed.

PUDLOWSKI, P.J., and KAROHL, J., concur.