DYK, Circuit Judge,
dissenting, with whom Circuit Judges NEWMAN, LINN, and REYNA join.
Contrary to the majority, I think it is quite clear that the National Childhood Vaccine Injury Act of 1986, Pub.L. No. 99-660, 100 Stat. 3743, 3755, Title III (1986) (codified at 42 U.S.C. § 300aa-1 to 34) [hereinafter the Vaccine Act], incorporates a discovery rule under which the limitations period does not begin to run until the claimant knew or should have known of a connection between the alleged injury and a vaccine.[1]
I
It is well established in both state and federal law that a discovery rule should be presumed for limitations purposes for claims similar to those under the Vaccine Act. The Supreme Court has “recognized a prevailing discovery rule ... in [the] two contexts] of latent disease and medical malpractice, ‘where the cry for [such a] rule is loudest.’ ” TRW Inc. v. Andrews, 534 U.S. 19, 27, 122 S.Ct. 441, 151 L.Ed.2d 339 (2001) (quoting Rotella v. Wood, 528 U.S. 549, 555, 120 S.Ct. 1075, 145 L.Ed.2d 1047 (2000)). Application of a discovery rule is necessary in these circumstances because the very fact that the plaintiff “has been injured ... may be unknown or unknowable until the injury manifests itself; and the facts about causation may be in the control of the putative defendant, unavailable to the plaintiff or at least very difficult to obtain.” United States v. Kubrick, 444 U.S. 111, 122, 100 S.Ct. 352, 62 L.Ed.2d 259 (1979). Where the plaintiff has knowledge of both the injury and its cause, however, “[t]he prospect is not so bleak” because the plaintiff is no longer at the mercy of the defendant, who possesses specialized medical knowledge. Id. Six of our sister circuits have similarly held that, in the case of medical malpractice and similar actions, the limitations period generally does not begin to run until the plaintiff knew or should have known of both the injury and its cause.[2] See also TRW, 534 *1346 U.S. at 27, 122 S.Ct. 441 (“[L]ower federal courts generally apply a discovery accrual rule when a statute is silent on the issue.”) (internal quotation marks omitted); Rotella, 528 U.S. at 555, 120 S.Ct. 1075 (“Federal courts, to be sure, generally apply a discovery accrual rule when a statute is silent on the issue.... ”).
While the majority does not dispute that the Vaccine Act remedy is similar to, and replaces, a medical malpractice or similar remedy, it asserts that the application of a discovery rule to petitions under the Vaccine Act is inappropriate because such a rule would be inconsistent with the language and structure of the Act. Relying on the Supreme Court decision in TRW, the majority points out that “Congress can ‘convey its refusal to adopt a discovery rule ... by implication from the structure or text of the particular statute.’” Maj. Op. at 1338 (quoting TRW, 534 U.S. at 27-28, 122 S.Ct. 441). The text and the structure of the Vaccine Act, however, do not suggest that Congress rejected a discovery rule. To the contrary, both the text and the structure of the Act confirm that Congress adopted the prevailing discovery rule approach.
A
Section 300aa-16(a)(2) of the Vaccine Act provides:
[I]f a vaccine-related injury occurred as a result of the administration of such vaccine, no petition may be filed for compensation under the Program for such injury after the expiration of 36 months after the date of the occurrence of the first symptom or manifestation of onset or of the significant aggravation of such injury.
42 U.S.C. § 300aa-16(a)(2). Notably, the statute does not provide that the limitations period commences on the date of the injury. Instead, the limitations period commences on the date of the “first symptom or manifestation ” of a “vaccine-related, injury,” making clear that the statute of limitations is triggered only where the claimant knew or should have known of both the injury and its connection to the vaccine. 42 U.S.C. § 300aa-16(a)(2) (emphases added). As the majority recognizes, the terms “symptom” and “manifestation” suggest knowledge or reason to know on the part of the claimant.[3] Maj. Op. at 1335. That knowledge requirement refers not merely to the existence of a vaccine-related injury, but to knowledge *1347 that the injury was related to the vaccine. In other words, the limitations period is not triggered by knowledge of the injury itself, but by the first event which would put. the claimant on notice that a vaccine-related injury has occurred.
Indeed, the limitations provision makes clear that it is not triggered merely by the first symptom of an injury — the injury itself must be related to the vaccine (i.e., a “vaccine-related injury”) and must occur “as a result of ... a vaccine.” 42 U.S.C. § 300aa-16(a)(2) (emphasis added). The statutory definition of “vaccine-related injury” confirms this point, defining “vaccine-related injury” as “an illness, injury, condition, or death associated with one or more of the vaccines set forth in the Vaccine Injury Table.” Id. § 300aa-33(5) (emphasis added). At the time the Vaccine Act was passed, the word “associated” was defined as “closely connected, joined, or united.” Webster’s Third New Int’l Dictionary 132 (1986). Thus, in order for an injury to be “associated with” a vaccine, there must be some connection between the injury and the vaccine, and there must be a manifestation or symptom of such an injury, i.e., there must be knowledge or reason to know that the injury is vaccine-related.
The majority asserts that the text of the Vaccine Act is inconsistent with the application of a discovery rule because “the clearly dominant language in the statute of limitations is ‘the date of occurrence of the first symptom or manifestation of onset.’ ” Maj. Op. at 1337 (quoting 42 U.S.C. § 300aa-16(a)(2)). Because the majority finds this phrase to be “dominant,” it fails to recognize that the phrase “first symptom or manifestation of onset” means nothing standing alone. It can be understood only by looking to the remainder of the language in the limitations provision, which links the “first symptom or manifestation” to “a vaccine-related injury” and requires that such injury occur “as a result” of a vaccine. See 42 U.S.C. § 300aa-16(a)(2).
The majority’s novel “dominant language” approach to statutory interpretation is plucked out of thin air and is contrary to Supreme Court precedent, which makes clear that when interpreting a statute, the “[i]nterpretation of a word or phrase depends upon reading the whole statutory text.” Dolan v. United States Postal Serv., 546 U.S. 481, 486, 126 S.Ct. 1252, 163 L.Ed.2d 1079 (2006); see also U.S. Nat’l Bank of Or. v. Indep. Ins. Agents of Am., Inc., 508 U.S. 439, 455, 113 S.Ct. 2173, 124 L.Ed.2d 402 (1993) (explaining that “we must not be guided by a single sentence or member of a sentence, but look to the provisions of the whole law, and to its object and policy”); Astoria Fed. Sav. & Loan Ass’n v. Solimino, 501 U.S. 104, 112, 111 S.Ct. 2166, 115 L.Ed.2d 96 (1991) (“[W]e construe statutes, where possible, so as to avoid rendering superfluous any parts thereof.”); Homback v. United States, 601 F.3d 1382, 1385 (Fed.Cir.2010) (quoting U.S. Nat’l Bank of Or., 508 U.S. at 455, 113 S.Ct. 2173). The majority’s rule that the limitations period begins to run on the “date of the occurrence of the first medically recognized symptom or manifestation of onset of the injury claimed by the petitioner,” Maj. Op. at 1325, simply rewrites the statutory language by leaving out the requirement that the injury be “vaccine-related” and occur “as a result” of a vaccine.
In an effort to support its decision to ignore the statutory text, the majority relies on legislative history supposedly demonstrating that Congress deliberately chose to trigger the limitations period from the date of the first symptom or manifestation of the alleged injury, regardless of whether there is an objective reason to suspect a causal connection between the alleged injury and the vaccine. Even under the questionable assumption that *1348 legislative history could support a reading contrary to the text of the statute, there is no such legislative history here. The majority cites two alternative pieces of legislation considered by Congress — H.R. 1780 and S. 827. The House of Representatives version required, in language similar to that finally enacted, that claims under the Act be brought within “two years after the first manifestation of a vaccine-related injury,” a formulation that also required the “first manifestation” be “vaccine-related.” National Childhood Vaccine-Injury Compensation Act of 1985, H.R. 1780, 99th Cong. § 2112(a) (1985). The Senate version required that claims be brought “within 5 years after the occurrence of the compensable complication or residual effect of the illness, disability, injury, or condition listed in the Vaccine Injury Table.” National Childhood Vaccine-Injury Compensation Act of 1985, S. 827, 99th Cong. § 2106(a) (1985). In the Senate bill, as in the final version of the Act, causation was presumed for injuries listed in the Vaccine Injury Table. See 42 U.S.C. § 300aa-ll(c)(l)(C)(i). The Senate version also permitted the filing of a petition after the time period specified if it was demonstrated that the claimant “did not know that such complication or effect was com-pensable under the program,” or the claimant “was not provided the information required by section 2143.” S. 827, § 2106(b). Section 2143(c)(9) required that persons receiving a vaccine listed in the Vaccine Injury Table be provided certain information, including “information on ... the availability of the Program.”
The majority urges that Congress’ rejection of the limitations provision set forth in the Senate bill demonstrates that Congress intended the limitations period to be triggered by the first symptom or manifestation of the alleged injury, regardless of whether there is any reason to suspect a connection between the alleged injury and the vaccine. But Congress’ rejection of the exception contained in the Senate bill in no way demonstrates that Congress intended to reject the application of a discovery rule.
First, unlike the Vaccine Act, the Senate bill did not permit a claimant to recover for an injury unless the injury was listed in the Vaccine Injury Table.[4] The only role of causation was to permit claimants to recover for Table injuries even though the time requirements for onset of the injury were not met. See S. 827, § 2105(a)(2).[5] The Senate bill did not, however, in this or any other respect, provide an exception to the limitations period based on the claimant’s lack of knowledge or reason to know that there was a causal connection between the alleged injury and the vaccine. Thus, the rejection of the Senate bill hardly suggests a rejection of a discovery rule requiring that the claimant know or have reason to know of a causal connection between the alleged injury and the vaccine.
Second, the exception to the limitations period in the Senate bill was not a discov *1349 ery rule. It did not depend on what the claimant knew or should have known, but on what the claimant actually knew. The exception permitted the filing of a petition after the time period specified only if it was demonstrated that (1) at the time of the vaccine, the petitioner was not provided with, among other things, information about the Vaccine Injury Compensation Program; or (2) that the petitioner did not know that the complication or effect of the injury was compensable under the Program. Id. §§ 2106(b), 2143(c)(9). Neither of these exceptions was designed to address a situation in which the claimant had no reason to suspect a causal connection between the alleged injury and the vaccine. Instead, they were designed to deal with circumstances in which the claimant had no knowledge of the availability or scope of the Vaccine Injury Compensation Program. As a result, Congress’ rejection of the Senate limitations provision, does not suggest that Congress rejected a discovery rule or intended the language in the limitations provision of the Vaccine Act to be read to mean something different than the plain language conveys.
B
The application of a discovery rule is compelled by both the structure and history of the Vaccine Act, as well as its language. If the limitations provision were interpreted not to incorporate a discovery rule, claimants like Dr. Cloer would be faced with the odd result that the limitations period would begin to run before a petition could be filed under the Act., i.e., before the cause of action accrued. The majority itself recognizes that “settled law establishes a firm default rule that a cause of action arises at the same time the statute of limitations begins to run on the cause.” Maj. Op. at 1333 (citing Graham Cnty. Soil & Water Conservation Dist. v. United States ex rel. Wilson, 545 U.S. 409, 418, 125 S.Ct. 2444, 162 L.Ed.2d 390 (2005)). Thus, absent an indication to the contrary, the limitations period begins when the cause of action accrues. Graham Cnty., 545 U.S. at 418, 125 S.Ct. 2444; see also Reiter v. Cooper, 507 U.S. 258, 267, 113 S.Ct. 1213, 122 L.Ed.2d 604 (1993) (declining to permit the “odd result” that the accrual of a federal cause of action and the start of the limitations period arise at different times without “any such indication in the statute”).
The Vaccine Act divides vaccine-related injuries into two types — those which appear in the Vaccine Injury Table (“Table injuries”) and those that do not (“non-Table injuries”). See 42 U.S.C. § 300aa-11(c)(1)(C). The same limitations period applies to both Table and non-Table injuries. See id. § 300aa-16(a)(2). For Table injuries, there is no need for the petitioner to establish causation because causation is presumed for injuries listed in the Table. 42 U.S.C. § 300aa-ll(c)(l)(C)(i). But where, as here, a claimant seeks compensation for a “vaccine-related injury” not listed in the Table, the petition must contain, among other things, “an affidavit, and supporting documentation, demonstrating that the person who suffered such injury ... sustained, or had significantly aggravated, any illness, disability, injury, or condition ... which was caused by a vaccine.” Id. § 300aa-ll(c)(l)(C)(ii) (emphasis added). A claimant’s cause of action does not accrue until the time at which the claim becomes enforceable.[6] Claims under the Vaccine Act become enforceable, or accrue, only when a claimant can file a petition demonstrating that the alleged injury was “caused by a vaccine.” Id. §§ 300aa-ll(a), (c). The legislative history makes clear *1350 that this requirement is not satisfied by a mere allegation that the injury was caused by the vaccine, i.e., the usual pleading standard. Instead, “evidence in the form of scientific studies or expert medical testimony is necessary.” H.R.Rep. No. 99-908, at 15,1986 U.S.C.C.A.N. 6844, 6356 (1986). Thus, in order for the limitations period to commence, the claimant must be able to file a petition. And in order to file a petition, the claimant must demonstrate a causal connection between the vaccine and the injury using “scientific studies or expert medical testimony.” See id. As a result, the limitations period cannot begin to run until “scientific studies or expert medical testimony” demonstrating a possible connection between the vaccine and the injury are known or should be known to the claimant.
The majority urges that a discovery rule would make “the otherwise neutral 36 month time limit ... vary from petitioner to petitioner,” Maj. Op. at 1340, and thus undermine this court’s decision in Markovich that the statute of limitations begins to run at “the first event objectively recognizable as a sign of a vaccine injury by the medical profession at large,” 477 F.3d at 1360. Under a discovery rule, however, the statute of limitations is triggered when the claimant knew or should have known that an injury was vaccine related. Though a claimant’s subjective knowledge is certainly sufficient to trigger the statute of limitations, Markovich makes clear that subjective knowledge is not required.
The remedial nature of the Vaccine Act also supports a discovery rule. The Supreme Court has long recognized the canon of construction that remedial legislation should be construed liberally. See, e.g., Atchison, Topeka & Santa Fe Ry. Co. v. Buell, 480 U.S. 557, 561-62, 107 S.Ct. 1410, 94 L.Ed.2d 563 (1987); Peyton v. Rowe, 391 U.S. 54, 65, 88 S.Ct. 1549, 20 L.Ed.2d 426 (1968); Cosmopolitan Shipping Co. v. McAllister, 337 U.S. 783, 790, 69 S.Ct. 1317, 93 L.Ed. 1692 (1949); Stewart v. Kahn, 78 U.S. 493, 504, 11 Wall. 493, 20 L.Ed. 176 (1870). The Vaccine Act, which created “a new system for compensating individuals who have been injured by vaccines,” H.R.Rep. No. 99-908, at 3, 1986 U.S.C.C.A.N. 6344, 6344, clearly falls into the category of remedial legislation. The Vaccine Act’s compensation program was intended to be a “program under which awards [could] be made to vaccine-injured persons quickly, easily, and with certainty and generosity.” Id. (emphasis added). It was “designed to work faster and with greater ease than the civil tort system.” Shalala v. Whitecotton, 514 U.S. 268, 269, 115 S.Ct. 1477, 131 L.Ed.2d 374 (1995) (citing H.R.Rep. No. 99-908, at 3-7). Thus, it is clear from the legislative history that Congress intended the Vaccine Act’s compensation program to be more generous than the civil tort system.[7]
*1351 At the time the Vaccine Act was enacted, a large number of states recognized a discovery rule under which the limitations period did not begin to run until the plaintiff knew or should have known of both the injury and its cause.[8] Thus, in these states, the statute of limitations on a vaccine-injury claim would not run until the claimant knew or should have known that there was a causal connection between the alleged injury and the vaccine. Under the majority’s reading of the limitations provision, however, the Vaccine Act may be far less generous than the remedy afforded by the civil tort system, which generally applies a discovery rule to injuries like the ones at issue here. A claimant who is legitimately injured by a vaccine will nonetheless be barred from filing a petition simply because science has not advanced enough prior to the end of the three-year period following his or her first symptom to furnish a reason to suspect a connection between the injury and the vaccine. This simply cannot be the result intended by Congress when it set out to establish a “program under which awards [could] be made to vaccine-injured persons ... with certainty and generosity.” H.R.Rep. No. 99-908, at 3, 1986 U.S.C.C.A.N. 6344, 6344.
In any event, it seems quite unlikely that Congress intended the Vaccine Act’s statute of limitations to effectively bar more generous state remedies that utilize a discovery rule, but that is also the effect of the majority’s decision. The Vaccine Act was not intended to bar state remedies, but to provide an additional system for vaccine injury compensation which would “lessen the number of lawsuits against manufacturers.” H.R.Rep. No. *1352 99-908, at 12, 1986 U.S.C.C.A.N. 6344, 6353 (1986). This was accomplished by “requir[ing] that a person with an injury resulting from a vaccine ... file a compensation petition and go through the compensation program before proceeding with any litigation against the manufacturer.” Id. Congress’ intent to preserve state law remedies is clearly expressed in § 300aa-16(c) of the Vaccine Act, which provides for a stay of state limitations periods when a petition for compensation is filed under the Vaccine Injury Compensation Program. See 42 U.S.C. § 300aa-16(c). But in states that recognize a discovery rule, that remedy is likely unavailable under the majority’s view.
The Vaccine Act plainly requires that a claimant seek a remedy from the Vaccine Injury Compensation Program before attempting to pursue state law claims. See 42 U.S.C. § 300aa-11(a)(2); H.R.Rep. No. 99-908, at 14, 1986 U.S.C.C.A.N. 6344, 6355 (stating that claimants “must complete the compensation proceeding ... before pursuing a civil action”); see also Bruesewitz v. Wyeth LLC, — U.S.-, 131 S.Ct. 1068, 1075, 179 L.Ed.2d 1 (2011). Where the claimant does not do so, the Act requires that the suit be dismissed by the state court. 42 U.S.C. § 300aa-11(a)(2)(B); see also H.R.Rep. No. 99-908, at 14. But the remedies available under the Vaccine Act are barred by the majority’s view if more than thirty-six months have passed since the claimant’s first symptom or manifestation of the injury. Thus, without the benefit of a discovery rule under the Vaccine Act, the claimant will be barred from filing a federal petition even though the state statute of limitations incorporating a discovery rule will not have run. The apparent result is that the state remedy will be barred for failure to file a petition under the Vaccine Act. It is incredible to think that the Vaccine Act was intended to foreclose the very state law remedies that it was designed to preserve and augment.[9]
In the end, there is nothing in the structure or history of the Vaccine Act that renders a discovery rule inappropriate. In fact, the structure and history of the Act not only confirm, but compel the conclusion that a discovery rule is appropriate.[10] Failure to adopt a discovery rule will cre *1353 ate a situation in which a claimant will be unfairly barred from filing a petition even if he or she never knows or has reason to know that a claim exists. Contrary to the majority’s assertion, a discovery rule does not result in disparate treatment of similarly situated claimants, but ensures equitable treatment of all claimants.
II
The injustice of the majority’s approach is amply demonstrated by the circumstances in this case. In Dr. Cloer’s case, there is no dispute that the first symptom or manifestation of injury occurred in May 1997 when she experienced a Lhermitte sign, which is recognized by the medical profession as a common symptom of MS. The government has submitted no evidence, however, that Dr. Cloer had reason to suspect a connection between multiple sclerosis (“MS”) and the Hepatitis B vaccine before 2004. Under the majority’s reading of the Act, the limitations period on Dr. Cloer’s claim began running on the date of her first symptom of MS, which occurred more than four years before her cause of action accrued. There is simply no indication that Congress intended that the limitations period begin before she had the information necessary to file a petition.

. This does not mean, of course, that a definitive diagnosis of the alleged injury is required to trigger the statute of limitations, as this court made clear in Markovich v. Sec'y of Health & Human Servs., 477 F.3d 1353, 1360 (Fed.Cir.2007).

. See, e.g.. Sell v. U.S. Dep’t of Justice, 585 F.3d 407, 409 (8th Cir.2009) ("In medical malpractice cases ... the cause of action accrues when the plaintiff discovers the nature and cause of his injury.”); Hensley v. United *1346 States, 531 F.3d 1052, 1056 (9th Cir.2008) (noting that, "[i]n certain circumstances, such as claims involving medical malpractice, accrual does not occur until a plaintiff knows of both the existence of an injury and its cause”); Green v. United States, 180 Fed.Appx. 310, 313 (3d Cir.2006) ("[W]hen the fact of injury alone is insufficient to put an injured party on notice of its cause, the Supreme Court has indicated that the accrual of the claim is delayed until the injured party discovers that cause.”); Waggoner v. United States, 95 Fed.Appx. 69, 71 (5th Cir.2004) ("[A] claim under the FTCA accrues when a plaintiff knows or reasonably should have known of ‘the existence and the cause of his injury.’ ”); Mix v. Delaware & Hudson Ry. Co., 345 F.3d 82, 86 (2d Cir.2003) (”[A]n FELA action accrues when the plaintiff in the exercise of reasonable diligence knows both the existence and the cause of his injury.”) (internal quotation marks omitted); Price v. United States, 775 F.2d 1491, 1493-94 (11th Cir.1985) ("[A] medical malpractice claim under the FTCA accrues when the plaintiff is, or in the exercise of reasonable diligence should be, aware of both [his] injury and its connection with some act of the defendant.”); see also Kubrick, 444 U.S. at 120-21, 100 S.Ct. 352 (noting government concession that in medical malpractice cases plaintiff must know of both injury and its cause).

. See Webster’s Third New Int’l Dictionary 1375, 2318 (1986) (defining "manifestation” as "something that manifests or constitutes an expression of something else: a perceptible outward, or visible expression,” and "symptom” as "something that indicates the existence of something else”).

. Section 2103 permitted the award of compensation only where "there is an adequate demonstration that ... the [claimant] sustained, or had significantly aggravated, any of the illnesses, disabilities, injuries, or conditions listed in the Vaccine Injury Table.” S. 827, § 2103(a)(2)(A). Additionally, the bill defined the term "vaccine-related injury” only in terms of injuries appearing in the Vaccine Injury Table, stating specifically that "the term ‘vaccine-related injury’ means any injury ... listed in the Vaccine Injury Table.” Id. § 2164(20).

. The Senate bill set forth a Vaccine Injury Table containing specific vaccines, injuries, and time periods for the first symptom or manifestation of onset of a listed injury. Id. § 2105(a)(1). Where the claimant’s first symptom did not occur within the specified time period, the claimant could nonetheless recover upon demonstrating that the injury was caused by the vaccine.

. To "accrue” in the sense of a cause of action means "[t]o come into existence as an enforceable claim or right.” Black’s Law Dictionary 23 (9th ed.2009).

. Developments in the past few years have demonstrated the importance of the right to sue for non-Table injuries. The Secretary has revised the Vaccine Injury Table to add only four vaccine-related injuries since the Vaccine Act was enacted in 1986. See National Vaccine Injury Compensation Program Revision of the Vaccine Injury Table, 60 Fed. Reg. 7678, 7694 (Feb. 8, 1995) (adding "Chronic arthritis” as an injury associated with the MMR vaccine); National Vaccine Injury Compensation Program: Revisions and Additions to the Vaccine Injury Table — II, 62 Fed. Reg. 7685, 7688 (Feb. 20, 1997) (adding "Brachial neuritis” as an injury associated with the DTP vaccine, "Thrombocytopenic purpura” and "vaccine-strain measles virus infection” as injuries associated with the MMR vaccine, and "vaccine-strain poliovirus infection” as an injury associated with the live poliovirus vaccine); National Vaccine Injury Compensation Program: Revisions and Additions to the Vaccine Injury Table, 67 Fed.Reg. 48558, 48559-60 (Jul. 25, 2002) (adding "in-tussusception” as an injury associated with the live, oral, rhesus-based rotavirus vaccine). In each case, the Secretary noted that the *1351 addition of a particular injury is appropriate only where it "can reasonably be determined ... to be caused ... by certain vaccines.” 62 Fed.Reg. at 7685; see also 67 Fed.Reg. at 48558 (stating that the proposed revisions were "based upon the Secretary’s determination that the [injury] can reasonably be determined in some circumstances to be caused by [a specific vaccine]”); 60 Fed.Reg. at 7681 (declining to add certain injuries allegedly related to the DTP vaccine because the Secretary "could not ‘reasonably determine' that a causal connection exists”). Additionally, the Secretary has stated that the addition of an injury to the Vaccine Injury Table is inappropriate “[w]here [the] scientific research concerning the relationship between a disorder and a vaccine is incomplete or nonexistent.” 62 Fed.Reg. at 7686.

. See, e.g., Anson v. Am. Motors Corp., 155 Ariz. 420, 747 P.2d 581, 584 (App.1987) (holding that "a cause of action does not ‘accrue’ until a plaintiff discovers or by the exercise of reasonable diligence should have discovered that he or she has been injured by the defendant’s negligent conduct”); Yamaguchi v. Queen’s Med. Ctr., 65 Haw. 84, 648 P.2d 689, 693 (1982) (same); Barnes v. A.H. Robins Co., 476 N.E.2d 84, 87-88 (Ind.1985) (same); Louisville Trust Co. v. Johns-Manville Prods. Corp., 580 S.W.2d 497, 501 (Ky.1979) (same); Penn v. Inferno Mfg. Corp., 199 So.2d 210, 219 (La.Ct.App.1967) (same); Baysinger v. Schmid Prods. Co., 307 Md. 361, 514 A.2d 1, 3-4 (1986) (same); Olsen v. Bell Tel. Labs., Inc., 388 Mass. 171, 445 N.E.2d 609, 611-12 (1983) (same); Cullender v. BASF Wyandotte Corp., 146 Mich.App. 423, 381 N.W.2d 737, 739 (1985) (same); Ahearn v. Lafayette Pharmacal, Inc., 729 S.W.2d 501, 503-504 (Mo.Ct.App.1987) (same); Thompson v. Neb. Mobile Homes Corp., 198 Mont. 461, 647 P.2d 334, 338 (1982) (noting that statute of limitations begins to run on products liability claims when the plaintiff knew or should have known of both the injury and the defect); Vispisiano v. Ashland Chem. Co., 107 N.J. 416, 527 A.2d 66, 71-72 (1987) (holding that the statute of limitations begins to run when the plaintiff knew or should have known of both the injury and its cause); O'Stricker v. Jim Walter Corp., 4 Ohio St.3d 84, 447 N.E.2d 727, 732 (1983) (same); Daugherty v. Farmers Coop. Ass'n, 689 P.2d 947, 950-51 (Okla.1984) (same); Burnside v. Abbott Labs., 351 Pa.Super. 264, 505 A.2d 973, 987-88 (1985) (same); Woods v. Sherwin-Williams Co., 666 S.W.2d 77, 78-79 (Tenn.Ct.App.1983) (same); Olson v. A.H. Robins Co., 696 P.2d 1294, 1298-99 (Wyo.1985) (same).

. The majority makes the strange argument that the failure of the Vaccine Act to tie the limitations period to "occurrence of the injury," as do state discovery statutes, somehow manifests a rejection of the discovery rule. Maj. Op. at 1338. The fact that Congress chose to be more explicit about the discovery rule than state statutes hardly reflects a different policy choice.

. The majority's sole structural argument is based on the fact that a discovery rule would provide claimants like Dr. Cloer with a more generous limitations period than that provided for claimants seeking compensation when a new injury is added to the Vaccine Injury Table. The majority asserts that it would be incongruous for claimants asserting non-Table injuries to "enjoy a more generous statute of limitations than ... Table Injury petitioners, for whom causation is presumed.” Maj. Op. at 1334. But the different treatment of the statute of limitations for Table and non-Table injuries makes eminent sense. Claimants asserting Table injuries have constructive notice of the vaccine-related nature of their injuries. Claimants asserting non-Table injuries, however, have no such notice. Based on the standards espoused by the Secretary, an injury may be added to the Vaccine Injury Table only where there is sufficient evidence to support a determination that the injury is caused by a certain vaccine. See supra note 7. If evidence of a causal connection has not advanced to that point, claimants will not have the benefit of constructive notice or any presumption of causation. In those circumstances, it is not at all incongruous that the statute of limitations should not begin to run until the claimant knew or should have known that the injury is vaccine-related.