Timothy BALL, Plaintiff/Appellant,

v.

**FRIESE CONSTRUCTION CO.,**
**Defendant/Respondent.**

No. ED 95984.

Missouri Court of Appeals,
Eastern District,
Division Three.

Sept. 20, 2011.

Charles W. Gray, St. Charles, MO, for Plaintiff/Appellant.

Joel D. Brett, St. Charles, MO, For Defendant/Respondent.

SHERRI B. SULLIVAN, J.

*Introduction*

Timothy Ball (Appellant) appeals from the circuit court's entry of summary judgment in favor of Friese Construction Co. (Respondent) on Appellant's petition seeking damages for breach of the implied warranty of habitability, fraud and violations of the Missouri Merchandising Practices Act. The circuit court found that Appellant's claims were barred by the statute of limitations. We affirm.

*Factual and Procedural Background*

On June 26, 2000, Appellant and Respondent entered into a contract for the construction of a single-family home located in St. Charles County. Respondent was the general contractor for the construction of the home. The sale of the home closed on March 29, 2001.

In December 2001, Appellant complained to Respondent that there were cracks in the basement floor. On December 13, 2001, SCI Engineering, Inc., hired by Respondent, issued a report of their observations and recommendations with regard to Appellant's complaints. The SCI report indicates previous excavation for the foundation revealed the presence of highly plastic soils, which SCI understood had been removed to a depth of three feet below subgrade in accordance with their recommendation. The SCI report stated it believed two possible causes for the cracking in the floor. SCI believed it was most likely that the home's footings had settled, and recommended that a structural engineer be consulted to determine whether the footings were properly designed to account for the load of the structure. The SCI report also stated that the building movement could be the result of heaving of the soil underlying the basement floor slab from water ponding beneath the slab due to the subgrade soils not being properly sloped to drain. SCI suggested that core holes could be drilled through the floor slab to determine the depth of clean rock and whether water was present within the clean rock backfill. On January 7, 2002, Respondent suggested that Appellant contact a structural engineer to determine whether the footings were sized properly.

On September 3, 2002, Appellant provided Respondent with a copy of a report from Strain Engineering stating that (1) physical evidence points to slab movement and no other movement of the structural elements; (2) the slab movement may be caused by "some type of water event that overfilled the voids in the rock and caused hard heaving of the slab by buoyancy"; (3) there was a funnel at the rear foundation

wall where the soil was depressed and water had been running down and standing in this depression, a condition for which Strain recommended immediate repair as the condition would place water into the fill beneath the basement floor slab and may be related to the damage seen; and (4) Strain recommended several actions aimed at moving water away from the foundation.

In December 2005, Appellant sent Respondent correspondence detailing issues he was having with the home, including problems with the basement slab, chimney structure, drywall tape, and doors which Appellant alleged were consistent with shifting in the home's foundation. In April 2006, Appellant sent Respondent another letter complaining that Respondent had failed to cure defects in the home, and that repairs were necessary to the basement slab, cracked wallboards, joints in shifted wall surfaces, and doorways and door jambs "that have been a persistent problem since we took possession of the property." In May 2006, Respondent responded to Appellant's complaints by letter in which it set forth the repairs it had previously made, denied the existence of structural defects in the home, and stated the belief that movement of the basement slab was related to water under the slab as a result of poor drainage due to Appellant's failure to properly maintain the storm water drains.

On December 13, 2009, GeoTest, Inc. sent Plaintiff a report stating the house was resting on highly plastic clay soils, which can swell with moisture and cause heaving of the floor slab and foundation. The report indicated that water had become trapped below the basement area due to inconsistent and insufficient slope of the basement excavation to the drainage system. The report recommended improving the finish grade to reduce surface water infiltration, and ensuring that downspout and sump pump discharge have an adequate slope away from the house. GeoTest's report indicated that the exterior walls were relatively stable but that the interior columns and floor slab had heaved.

On May 28, 2010, Appellant filed a lawsuit against Respondent alleging a breach of the implied warranty of habitability, fraud and violations of the Missouri Merchandising Practices Act. On July 13, 2010, Respondent filed a Motion for Summary Judgment with exhibits and affidavits contending Appellant's claims were barred by the statute of limitations because Appellant's claims and damages were capable of ascertainment in 2002. On November 10, 2010, the circuit court entered its Order and Judgment granting Respondent's Motion for Summary Judgment, finding that Appellant's damages were capable of ascertainment for purposes of application of the five-year statute of limitations well before 2005. This appeal follows.

*Points Relied On*

In his first point on appeal, Appellant argues the circuit court erred in granting summary judgment in favor of Respondent because Section 561.100 [1] provides for a tolling of the statute of limitations when the damages resulting from a wrong are not capable of ascertainment, in that Appellant's damages were the result of Respondent's failure to properly remove and/or compact highly plastic soil underneath Appellant's basement slab and thus the damages were not capable of ascertainment as per the statute until 2009.

In his second point on appeal, Appellant argues the circuit court erred in granting summary judgment in favor of Respondent

1. All statutory references are to RSMo 2006.

because Section 561.100 provides for a tolling of the statute of limitations when multiple items of damage are suffered until the last item of damage is suffered, in that Appellant's case involves a series of separate items of damage that have been sustained over the years. Appellant contends that new items of damage are being sustained and are certain to continue if the Respondent's workmanship is not corrected.

### Standard of Review

We review the circuit court's grant of summary judgment essentially *de novo*. *ITT Comm. Fin. Corp. v. Mid–Am. Marine Supply Corp.*, 854 S.W.2d 371, 376 (Mo. banc 1993). Whether to grant summary judgment is purely an issue of law. *Ashford Condo., Inc. v. Horner & Shifrin, Inc.*, 328 S.W.3d 714, 717 (Mo.App. E.D. 2010). We will uphold summary judgment on appeal only where there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. *ITT Comm. Fin. Corp.*, 854 S.W.2d at 376; Rule 74.04(c).[2] The record is viewed in the light most favorable to the party against whom judgment was entered. *Citibrook II, L.L.C. v. Morgan's Foods of Missouri, Inc.*, 239 S.W.3d 631, 634 (Mo.App. E.D. 2007).

A defendant, as the movant, can establish a prima facie case for summary judgment by showing any of the following: (1) facts that negate any one of the elements of a claimant's cause of action; (2) that the non-movant, after an adequate period of discovery, has not been able to produce, and will not be able to produce, evidence sufficient to allow the trier of fact to find the existence of any one of the claimant's elements; or (3) that there is no genuine dispute as to the existence of each of the facts necessary to support movant's prop-

erly pleaded affirmative defense. *Sloss v. Gerstner*, 98 S.W.3d 893, 896 (Mo.App. W.D.2003). Here, Respondent employed the third means, alleging facts which it contends establish the affirmative defense of the running of the statute of limitations. Respondent has the burden of proving the statute of limitations as an affirmative defense. *Bus. Men's Assur. Co. of Am. v. Graham*, 984 S.W.2d 501, 507 (Mo. banc 1999). We will affirm the trial court's judgment if it is sustainable on any theory. *Citibrook*, 239 S.W.3d at 634.

### Discussion

Appellant brought claims against Respondent for a breach of the implied warranty of habitability, fraud and violations of the Missouri Merchandising Practices Act related to the construction of a house in 2001. Each of these claims is governed by the five-year limitations period in Section 516.120. See Section 516.120 (five-year statute of limitations for actions on implied liabilities and contracts, fraud, and liabilities created by statute). The question before this Court is whether Appellant's May 28, 2010 petition was timely filed.

The statute of limitations is intended to prevent the assertion of stale claims. *Graham*, 984 S.W.2d at 507. In Missouri, "the statute of limitations is triggered not by discovery of damage, but by the commencement of the right to sue." *Id.* These two events do not necessarily coincide. *Id.* "The triggering event of the applicable statute of limitations is when damage is sustained and becomes capable of ascertainment." *Id.*

### Capable of Ascertainment

In his first point, Appellant contends the five-year statute of limitations

2. All rule references are to Mo. R. Civ. P.2010.

was tolled by Section 516.100 because the damages were not capable of ascertainment until December 2009 when GeoTest Inc. performed tests on the premises.

██ The Missouri Supreme Court has interpreted Section 516.100's capable of ascertainment standard as an objective standard, stating that "the statute of limitations begins to run when the 'evidence was such to place a reasonably prudent person on notice of a potentially actionable injury.'" *Powel v. Chaminade College Prep., Inc.*, 197 S.W.3d 576, 582 (Mo. banc 2006), quoting *Graham*, 984 S.W.2d at 507. "The test to be applied is 'when a reasonable person would have been put on notice that an injury and substantial damages may have occurred and would have undertaken to ascertain the extent of the damages.'" *Ashford Condo., Inc. v. Horner & Shifrin, Inc.*, 328 S.W.3d 714, 718 (Mo.App. E.D. 2010), quoting *State ex rel. Marianist Province of the United States v. Ross*, 258 S.W.3d 809, 811 (Mo. banc 2008). "In order for the statute [of limitations] to accrue, plaintiff must have knowledge of the wrong and at least nominal damage, or [knowledge] of something that puts plaintiff on notice to inquire further." *Gaydos v. Imhoff*, 245 S.W.3d 303, 307 (Mo.App. W.D.2008).

In his petition, Appellant alleged that the extent of the damage was not discoverable by Appellant without GeoTest's study. Appellant's claim fails for several reasons. First, Appellant was aware of issues with the basement slab by December 2001. As a result, tests were conducted by two different companies, one in 2001 by SCI Engineering and another in 2002 by Strain Engineering. Both companies' reports indicated that the damages may have been the result of heaving of the slab due to water under the basement floor. At this point, a reasonable person would have been put on notice that an injury and substantial damages may have occurred, and would have inquired further to ascertain the extent of the damages.

"Damages are ascertained when the fact of damage appears, not when the extent or amount of damage is determined." *Kennedy v. Microsurgery and Brain Research Institute*, 18 S.W.3d 39, 42 (Mo.App. E.D. 2000). Although Appellant continued to experience problems with the home, he waited until 2009, approximately seven years, before having another study completed to further ascertain the cause of the defect. The damages evident in 2001, coupled with the reports in 2001 and 2002, would have put a reasonably prudent person on notice of a potentially actionable injury; thus the statute of limitations began to run at that time.

Appellant argues that both SCI and Strain failed to determine the exact cause of the damage to Appellant's home and instead each company offered a variety of possible causes. Appellant contends that the damages were not capable of ascertainment until GeoTest's study in 2009 uncovered the home's defect. Even if this Court were to assume that Appellant did not discover certain aspects of the damage until GeoTest's study, this discovery does not necessarily toll the statute of limitations. "[A] cause of action accrues when the damage can be discovered, not when it is actually discovered." *Lane v. Non–Teacher Sch. Employee Ret. System of Missouri*, 174 S.W.3d 626, 634 (Mo.App. W.D.2005). Appellant, as the homeowner, could have had additional studies done after the initial recommended remedial efforts failed. Instead, Appellant chose to wait seven years to order the study that he claims was necessary to discover the cause of the damage. Quite simply, Appellant could have discovered the cause of the damages earlier, yet chose not to take the steps necessary to do so.

The record indicates that Appellant had reason to believe his basement floor was heaving due to water underneath the floor slab in 2002, more than five years prior to the time he filed his petition. At that point, a reasonably prudent person would have been put on notice of a potentially actionable injury; thus the statute of limitations began to run. Based on the foregoing, Appellant's Point I is denied.

### More Than One Item of Damage

■ Section 516.100 provides that a cause of action does not accrue, when there is more than one item of damage, until the last item of damage is sustained so that all damages may be recovered. In his second point, Appellant contends that the statute of limitations is tolled pursuant to Section 516.100 because he has suffered multiple items of damage over the years.

This case is analogous to *Arst v. Max Barken, Inc.*, 655 S.W.2d 845, 847 (Mo. App. E.D.1983). In *Arst*, the plaintiff homeowners discovered cracks and shifting of the foundation of their home one month after its purchase in June 1969. *Id.* at 846. Despite remedial efforts, the homeowners complained to the defendant builder of additional cracks appearing in 1971 and 1974. *Id.* Based on a 1976 study conducted by the builder's soil engineers, the home's foundation was underpinned and the cracks were patched. *Id.* However, more cracks developed after the underpinning. *Id.* For some time, the homeowners continued to monitor the problem but did nothing to further remedy the defective condition. *Id.* The homeowners eventually had two additional soil engineering firms inspect the premises, both coming to a different conclusion than the prior engineers. *Id.* at 847. The homeowners filed suit in 1981, contending the damages to their home were not ascertainable until after 1976, when additional movement occurred, as it was only then they could have maintained an action for the full extent of their damages. *Id.* at 847.

The *Arst* court rejected the homeowners' assertions, finding that the cause of action accrued when their house was delivered in its defective condition and they discovered cracks and shifting of their house's foundation because, at that time, the damage was sustained and capable of ascertainment. *Id.* The court found the fact that the damage was continuing to be immaterial, as there was a single wrong committed, not multiple wrongs. *Id.* Specifically, the court found that "[w]hen there is only one wrong which results in continuing damage, as in the case at bar, the cause of action accrues when that wrong is committed and the damage sustained is capable of ascertainment." *Id.* at 847–48.

*Arst*'s logic applies to the case *sub judice*. In this case, Appellant alleges only one wrong, *i.e.*, inadequate construction related to the basement floor slab, which caused damage to his home. There are not continuing wrongs causing new and distinct damages. Nor can it be said that this case involves a delayed manifestation of damages. See *Arst*, 655 S.W.2d at 847. Appellant discovered cracking in the basement floor in 2001, and two engineering reports conducted shortly thereafter indicated that the basement floor slab was heaving, possibly due to water issues beneath the slab. Appellant continued to experience similar problems after the initial testing and remedial efforts were completed, yet he neglected to employ additional experts to ascertain the nature of his damages until 2009. Appellant's observations and complaints of damages in 2001 and 2002 were of the same nature and degree as those of which he complained in his 2010 petition, all the result of a single

wrong. See *Ashford Condo., Inc.,* 328 S.W.3d at 721–22.

We find that Appellant did not sustain multiple items of damage of the nature that would toll the statute of limitations pursuant to Section 516.100. Appellant had notice of his injury and potential cause of action against Respondent in 2002, and it is then that the statute of limitations began to run. Based on the foregoing, Appellant's Point II is denied.

We find the circuit court did not err in granting summary judgment in favor of Respondent because there are no genuine issues of material fact and Respondent is entitled to judgment as a matter of law.

### Conclusion

The judgment of the circuit court is affirmed.

ROBERT G. DOWD, JR., P.J. and MARY K. HOFF, J., concur.