COLLOTON, Circuit Judge, dissenting.
 

 I conclude that the district court correctly applied Missouri law in ruling that Jo Levitt's claim against Merck & Company was barred by the statute of limitations. I would therefore affirm the judgment.
 

 Missouri applies an "inquiry notice" standard to begin the running of a statute of limitations.
 
 Powel v. Chaminade Coll. Preparatory, Inc.
 
 ,
 
 197 S.W.3d 576
 
 , 583 (Mo. 2006). There is no requirement that the plaintiff have actual knowledge of her injury and its cause.
 
 Wheeler v. Eftink
 
 ,
 
 507 S.W.3d 598
 
 , 604 (Mo. Ct. App. 2016). A cause of action accrues when the "evidence was such to place a reasonably prudent person on notice of a potentially actionable injury."
 
 Powel
 
 ,
 
 197 S.W.3d at 582
 
 .
 

 In this case, Levitt suffered cardiovascular injuries in March and May 2000 while taking Vioxx, a medication manufactured by Merck. She underwent double coronary bypass surgery. Around the same time, information in the public domain placed a reasonably prudent person on notice of a causal theory that linked Vioxx to cardiovascular injuries. The district court properly took judicial notice of several peer-reviewed journal articles, media reports, and public court records, some of which were even cited in Levitt's complaint.
 
 See, e.g.
 
 ,
 
 Miller v. Redwood Toxicology Lab., Inc.
 
 ,
 
 688 F.3d 928
 
 , 931 n.3 (8th Cir. 2012) ;
 
 Levy v. Ohl
 
 ,
 
 477 F.3d 988
 
 , 991 (8th Cir. 2007) ;
 
 Kushner v. Beverly Enters.
 
 ,
 
 317 F.3d 820
 
 , 831 (8th Cir. 2003) ;
 
 Wash. Post v. Robinson
 
 ,
 
 935 F.2d 282
 
 , 291-92 (D.C. Cir. 1991).
 

 In 2000, an article in the
 
 New England Journal of Medicine
 
 reported that in a clinical study of 8,076 people taking arthritis drugs, patients using Vioxx suffered more heart attacks than patients using a comparator agent, naproxen. News reports on this study explained that a clinical trial of Vioxx had "detected statistically 'significant' cardiovascular problems," (Newark Star-Ledger, April 2000), that "patients on Vioxx were more likely to suffer heart attacks and other cardiovascular complications than those on naproxen," (USA Today, Feb. 2001), that "patients taking Vioxx have a higher risk of heart attack," (CBS The Early Show, May 2001), and that takers of Vioxx"had significantly more heart attacks" than users of the alternative. (Washington Post, March 2001).
 
 See
 
 J.A. 639, 898-99, 901, 904.
 

 In August 2001, a review of literature published in the
 
 Journal of the American Medical Association
 
 reiterated that the clinical study showed a "significantly increased risk of cardiovascular event" with use of Vioxx rather than the alternative, and opined that "the available data raise a cautionary flag about the risk of cardiovascular events" with Vioxx. The authors found "a potential increase in cardiovascular event rates" for Vioxx and "urge[d] caution in prescribing" the drug to certain patients.
 

 As early as July 2001, other plaintiffs sued Merck alleging that Vioxx caused serious cardiovascular events. One complaint
 from July 23, 2001, alleged that Vioxx had "been linked to several severe and life threatening medical disorders," including heart attack and stroke. J.A. 931,
 
 Reid v. Merck & Co.
 
 , Case No. BC254630 (Cal. Sup. Ct. July 23, 2001). Levitt herself alleged that Merck's 2001 Annual Report disclosed that a number of federal and state lawsuits had been filed against Merck with respect to Vioxx, alleging gastrointestinal bleeding and cardiovascular events. R. Doc. 1, at 9.
 

 Despite all of this information in the public domain before September 2001, the court holds that a reasonable jury could find that a reasonably prudent person who had suffered cardiovascular injuries while taking Vioxx was
 
 not
 
 on inquiry notice of a potential claim against Merck. The rationale apparently is that the scientific data allowed for uncertainty about whether Vioxx caused cardiovascular injuries, and Merck was disputing the causal link.
 

 In my view, the court's approach calls for more than the "inquiry notice" required to start the statute of limitations under Missouri law. The Missouri Court of Appeals, Eastern District, long ago ruled that a "possible causation link" based on literature in the medical community that "suggested" a "causal connection" was sufficient as a matter of law to start the limitations period running.
 
 Ahearn v. Lafayette Pharmacal, Inc.
 
 ,
 
 729 S.W.2d 501
 
 , 503 (Mo. Ct. App. 1987).
 

 The court believes that a recent decision of the Missouri Court of Appeals, Western District, rejected the standard applied in
 
 Ahearn
 
 , but that case involved a different issue. In
 
 Giles v. Carmi Flavor & Fragrance Co.
 
 ,
 
 475 S.W.3d 184
 
 (Mo. Ct. App. 2015), the plaintiff was not even diagnosed with his injury outside the limitations period, so the causal link between his injury and the defendant's product was immaterial to the decision.
 
 See
 

 id.
 

 at 193
 
 ("The first two specialists who treated Giles
 
 were unable to diagnose
 
 bronchiolitis obliterans even though they were made aware of the potential occupational hazard.
 
 Under these facts
 
 , we cannot find as a matter of law that Giles's cause of action accrued prior to 2007.") (emphases added).
 
 Giles
 
 distinguished
 
 Ahearn
 
 on this basis, and the court never decided whether particular scientific studies or journal articles suggesting a causal link were sufficient to place an injured party on inquiry notice.
 
 Id
 
 . at 194.
 
 Giles
 
 hinged on the fact that "neither of two specialists was able
 
 to diagnose
 
 [the plaintiff] with a lung condition related to [his] exposure" more than five years before his lawsuit.
 
 Id
 
 . at 193 (emphasis added).
 

 Dictum
 
 in
 
 Giles
 
 does say that the science in
 
 Ahearn
 
 "had long provided a causal connection between the diagnosis and the alleged wrong," while the scientific community in
 
 Giles
 
 was "only beginning to piece together a connection between the bronchiolitis obliterans and diacetyl when Giles began showing symptoms of lung disease."
 
 Id
 
 . This discussion provides little insight, however, because
 
 Giles
 
 says that the plaintiff began showing symptoms in 1999,
 
 id
 
 . at 192, but does not describe what was known in the scientific community about a causal link at that time.
 
 Ahearn
 
 described only a "possible causation link" based on literature that "suggested" a causal connection, so
 
 Giles
 
 must have been referring to lesser knowledge than that when it contrasted
 
 Ahearn
 
 .
 

 The better view of Missouri law is that studies, articles, and lawsuits in the public domain before September 2001 placed Levitt on notice to inquire further about whether Vioxx caused her cardiovascular injuries. To require definitive proof of causation, a consensus in the scientific community, or an admission by the putative defendant before the claim accrues would swallow the inquiry notice rule. And once
 the information is available to a reasonably prudent person, it does not matter whether the literature has been published for three weeks or three decades. When a plaintiff should know about an injury and a variety of possible causes, she is on notice to inquire further, and the statute of limitations begins to run, even though the exact cause is yet unknown.
 
 See
 

 Ball v. Friese Const. Co.
 
 ,
 
 348 S.W.3d 172
 
 , 177 (Mo. Ct. App. 2011). As the Iowa Supreme Court explained in an analogous situation, an "inquiry notice" standard does not postpone the beginning of the limitations period until a
 
 successful
 
 completion of the plaintiff's investigation.
 
 Ranney v. Parawax Co.
 
 ,
 
 582 N.W.2d 152
 
 , 156 (Iowa 1998). Once the plaintiff knows of a possible causation link, she is on notice to investigate, and she must complete an investigation and file any action within the limitations period.
 
 Id
 
 .
 

 The court says it is merely holding that the limitations issue cannot be decided "as a matter of law," but the standard "is an objective one," and "where relevant facts are uncontested, the statute of limitations can be decided by the court as a matter of law."
 
 Powel
 
 ,
 
 197 S.W.3d at 585
 
 . In
 
 Giles
 
 , there was a factual issue about whether the plaintiff's
 
 condition
 
 was capable of ascertainment
 
 before
 
 he was diagnosed.
 
 475 S.W.3d at 194
 
 . But here, the relevant facts are uncontested. Levitt's condition of cardiovascular injury was diagnosed before September 2001. There is no dispute about the scientific literature, media reports, corporate annual reports, and publicly-filed lawsuits that were in the public domain before September 2001. The only fighting issue is a legal one: whether the publicly-available information placed a reasonably prudent person with cardiovascular injury after taking Vioxx on inquiry notice of a potential claim against Merck. By referring this issue to a jury, and characterizing it as a "question of fact," the court ironically contemplates a possible ruling
 
 against
 
 Levitt based on scientific literature that the court says was "only beginning to piece together" a connection between Vioxx and cardiovascular injury. In my view, the better conclusion under Missouri law is that the relevant scientific literature, reports, and lawsuits described a "possible causation link" and "suggested" a causal connection, such that the limitations period began to run as a matter of law.
 
 See
 

 Ahearn
 
 ,
 
 729 S.W.2d at 503
 
 .
 

 Levitt was on inquiry notice that she had a potential claim against Merck before September 2001, but she did not file this action until September 2006. The five-year statute of limitations had therefore expired. Levitt argues alternatively that Merck fraudulently concealed her cause of action, but the district court correctly rejected this claim: facts in the public domain placed Levitt on inquiry notice by September 2001, and a putative defendant does not fraudulently conceal by disputing a theory of causation. For these reasons, I would affirm the judgment.