938 F.Supp. 561 (1996)
Chris BUTTICE, Plaintiff,
v.
G.D. SEARLE & COMPANY, et al., Defendants.
No. 4:95-CV-1297 CAS.
United States District Court, E.D. Missouri, Eastern Division.
September 3, 1996.
*562 *563 Danieal H. Miller, Danieal H. Miller, P.C., Columbia, MO, Josh P. Tolin, McAvoy and Bahn, Fenton, MO, for plaintiff.
Mark C. Hegarty, Harvey L. Kaplan, Scott Sayler, Shook and Hardy, Kansas City, MO, for defendant.

MEMORANDUM AND ORDER
SHAW, District Judge.
This matter is before the Court on defendant G.D. Searle & Company's ("defendant" or "Searle") three separate motions for summary judgment on the issues of (i) the statute of limitations; (ii) failure of proof; and (iii) proximate cause. Plaintiff opposes each motion.
In this diversity action, plaintiff alleges she sustained permanent injuries from the use of a Cu-7 intrauterine contraceptive device ("IUD") manufactured and sold by Searle. Plaintiff contends that as a result of her use of the IUD, she sustained a pelvic infection which led to blockage of her fallopian tubes and infertility. Plaintiff asserts claims for strict products liability in Count I, statutory unfair merchandising practices and/or fraud in Count II, and breach of warranty in Count III.
For the following reasons, the Court determines that plaintiff's claims are barred by the applicable statute of limitations.
Summary Judgment Standard. The standards applicable to summary judgment motions are well settled. Pursuant to Federal Rule of Civil Procedure 56(c), a court may grant a motion for summary judgment if all of the information before the court shows "there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." See Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986).
The initial burden is placed on the moving party. City of Mt. Pleasant, Iowa v. Associated Elec. Co-op., Inc., 838 F.2d 268, 273 (8th Cir.1988) (the moving party has the burden of clearly establishing the non-existence of any genuine issue of fact that is material to a judgment in its favor). Once this burden is discharged, if the record does in fact bear out that no genuine dispute exists, the burden then shifts to the non-moving party who must set forth affirmative evidence and specific facts showing there is a genuine dispute on that issue. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249, 106 S.Ct. 2505, 2510-11, 91 L.Ed.2d 202 (1986).
Once the burden shifts, the non-moving party may not rest on the allegations in its pleadings, but by affidavit and other evidence must set forth specific facts showing that a genuine issue of material fact exists. Fed. R.Civ.P. 56(e). The non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *564 Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986). In fact, the non-moving party must show there is sufficient evidence favoring the non-moving party which would enable a jury to return a verdict for it. Anderson, 477 U.S. at 249, 106 S.Ct. at 2510-11; Celotex, 477 U.S. at 324, 106 S.Ct. at 2553.
In support of the motion for summary judgment, movant has filed several exhibits. In passing on a motion for summary judgment, this Court is required to view the facts set forth in these documents in a light most favorable to the non-moving party and must give the non-moving party the benefit of any inferences that can logically be drawn from those facts. Matsushita, 475 U.S. at 587, 106 S.Ct. at 1356; Buller v. Buechler, 706 F.2d 844, 846 (8th Cir.1983). Moreover, this Court is required to resolve all conflicts in favor of the non-moving party. Robert Johnson Grain Co. v. Chemical Interchange Co., 541 F.2d 207, 210 (8th Cir.1976).
With this standard in mind, the Court accepts the following facts as true for purposes of resolving this motion for summary judgment.[1]
Facts. Plaintiff had a Cu-7 IUD inserted for birth control purposes on or about September 28, 1976 by a Dr. Gall. (Complaint, ¶ 5; Pltf.'s depo., p. 154.) Approximately a year later, plaintiff had the IUD removed by another doctor. (Complaint, ¶ 7; Pltf.'s depo, pp. 159-60.) After removal of the IUD, plaintiff began attempting to become pregnant. (Pltf.'s depo., p. 164.) In May 1980, plaintiff consulted Dr. Robert D. Bale, an obstetrician/gynecologist, for fertility-related problems. (Deft.'s Ex. 3, p. 180.)
In April or May 1981, Dr. Bale performed a diagnostic laparoscopy, hysterosalpingogram ("HSG") and dilation and curettage ("D & C") on plaintiff. (Pltf.'s depo., pp. 170-71; Deft.'s Ex. 3, pp. 179, 181.) Following these procedures, Dr. Bale diagnosed plaintiff with fallopian tubes closed by adhesions, and clubbing of the left tube. (Deft.'s Ex. 3, p. 181.) Plaintiff testified that at some point after these procedures were performed, she understood her fallopian tubes were blocked and that she could not conceive as a result. (Pltf.'s depo., pp. 170-73.) Because of plaintiff's condition, Dr. Bale referred her to an infertility specialist, Dr. Romeo Perez. (Id., p. 203.)
On August 28, 1981, Dr. Perez performed another laparoscopy and D & C on plaintiff, and a laparotomy, left salpingoplasty, bilateral cornual implantation, and pelvic adhesiolysis. (Deft.'s Ex. 4, p. 99). This surgical procedure in part involved removal of the obstructed portions of plaintiff's fallopian tubes and surgical reconstruction of the tubes. (Pltf.'s depo., pp. 180, 210-218; Deft.'s Ex. 4 at pp. 97-99.) Prior to the surgery, Dr. Perez diagnosed plaintiff with "[i]nfertility secondary to tubal adhesions, tubal clubbing." (Deft.'s Ex. 5, p. 42.) At some point following the surgery, Dr. Perez informed plaintiff that it had been unsuccessful. (Pltf.'s depo., pp. 216-18.)
In 1983, plaintiff underwent further treatment for infertility, including in vitro fertilization, at Ohio State University. (Pltf.'s depo., pp. 123, 190-94, 223-24; Deft.'s Ex. 6, p. 121.) The procedure did not result in conception, and plaintiff has never been able to become pregnant.
By at least July 1986, plaintiff called Dr. Gall to inquire as to the type of IUD she had used, to determine if it had been a Dalkon Shield, which plaintiff had heard was linked to infertility and miscarriage. (Pltf.'s depo., pp. 183-84, 187-88.) Plaintiff did not realize until sometime in 1994, however, during a *565 conversation with her sister-in-law, that there were also fertility-related "problems" linked to the Cu-7 IUD. (Id., pp. 182-83, 186.)
On June 15, 1995, plaintiff filed the instant action against Searle. As previously noted, plaintiff contends that her use of the Cu-7 IUD caused her to sustain a pelvic infection which resulted in her blocked fallopian tubes and infertility. (Complaint, ¶¶ 7, 9.) Plaintiff testified she has never been told by a doctor that IUD use caused her blocked fallopian tubes or infertility or necessitated the surgeries she underwent, but plaintiff attributes all of her fertility-related problems to IUD use. (Pltf.'s depo., pp. 190, 259-60, 265-67.)
By the early to mid 1980's, medical texts regularly referenced the reported association between IUD use and pelvic inflammatory disease ("PID"), particularly in nulliparous women,[2] and the resulting possibility of infertility. See, e.g., Danforth, D., Obstetrics and Gynecology, ch. 14, pp. 270-76 (4th ed. 1982); Speroff, L., et al., Clinical Gynecologic Endocrinology & Infertility, ch. 15, pp. 443-44 (3d ed. 1983); Sweet, R.L. & Gibbs, R.S., Infectious Diseases of the Female Genital Tract, ch. 4, pp. 53-55, 64-65 (1985); Droegemueller, W., et al., Comprehensive Gynecology, ch. 11, pp. 297-307 (1987). These texts document that the medical community was aware more than five years before plaintiff filed this action that a possible association existed between IUD use and resulting pelvic infections and infertility, particularly in women who had not previously borne children.
Discussion. As a threshold matter, the Court first addresses the procedural objections raised by plaintiff to defendant's motion for summary judgment based on statute of limitations grounds.
Plaintiff objects that defendant did not adequately allege the statute of limitations as an affirmative defense in its answer because defendant did not state the specific statutes upon which it relied. This objection is without merit. Paragraph 26 of defendant's Answer under the heading "Second Affirmative Defense" states in pertinent part, "Plaintiff's claims are barred by the applicable statute of limitations". This satisfies the requirements of Rule 8(c) of the Federal Rules of Civil Procedure, as the purpose of the rule is to "put opposing parties on notice of affirmative defenses and to afford them the opportunity to respond" thereto. See Daingerfield Island Protective Soc. v. Babbitt, 40 F.3d 442, 444 (D.C.Cir.1994) (answer which stated, "Plaintiffs' claims are barred by the applicable statute of limitations" met the requirements of Rule 8(c)). A limitations defense "need not be articulated with any rigorous degree of specificity and is sufficiently raised for purposes of Rule 8 by its bare assertion." Daingerfield, 40 F.3d at 445 (citations and internal punctuation omitted).
Next, plaintiff moves to strike all of the exhibits attached to defendant's memorandum in support of its motion for summary judgment on the grounds that the exhibits are hearsay. Specifically, plaintiff objects to the excerpts from "learned treatises" because they are not accompanied by affidavits of medical experts, and to plaintiff's medical records because there is no supporting affidavit from the custodian of the records. Plaintiff does not state the basis for seeking to strike her own deposition testimony.
When ruling on a summary judgment motion, the Court may consider only the portion of submitted materials which would be admissible or useable at trial. Walker v. Wayne County, Iowa, 850 F.2d 433, 434 (8th Cir.1988), cert. denied sub nom Martin v. Walker, 488 U.S. 1008, 109 S.Ct. 791, 102 L.Ed.2d 783 (1989). Thus, without a showing of admissibility, a party may not rely on hearsay evidence for purposes of a motion for summary judgment. Id., 850 F.2d at 435; Pink Supply Corp. v. Hiebert, Inc., 788 F.2d 1313, 1318 (8th Cir.1986). Plaintiff's objections are without merit, however. The excerpts from medical texts are not inadmissible hearsay because they are not offered for the truth of the matters asserted *566 therein, but rather to establish the existence of medical literature and thus knowledge of the medical community concerning IUD use and pelvic inflammatory disease at a particular point in time. See, e.g., Cook v. Navistar Int'l Transp. Corp., 940 F.2d 207, 213-14 (7th Cir.1991) (industry publications pertaining to design standards in existence at time of product's manufacture not hearsay where offered to show actual and constructive knowledge of defendant); Marsee v. United States Tobacco Co., 866 F.2d 319, 325-26 (10th Cir.1989) (scientific articles not hearsay and properly admitted on the issue of defendant's notice that its product posed potential health threat); Kershaw v. Sterling Drug, Inc., 415 F.2d 1009, 1011 (5th Cir.1969) (medical articles not hearsay and properly admitted to show that defendant should have known of existence and nature of particular disease).
Further, cases in this circuit have considered the existence of medical texts in determining the knowledge of the medical community concerning the causal link between a plaintiff's condition and the product at issue. For example, in King v. Nashua Corp., 763 F.2d 332, 333-34 (8th Cir.1985), in holding the plaintiff's claims time barred, the Eighth Circuit cited three medical articles to establish that "the medical community was aware of the causation link as early as 1975", although the plaintiff did not discover the cause of her injuries until 1982. In In re Tetracycline Cases, 729 F.Supp. 662, 665 (W.D.Mo.1989), in finding the plaintiff's claim time barred, the court noted that the causal connection between the plaintiff's injuries and the drug product at issue "was well known and well publicized in the medical and dental communities." See also Ahearn v. Lafayette Pharmacal, Inc., 729 S.W.2d 501, 503 (Mo.App.E.D.1987) (finding plaintiff's claim time barred; noting the existence of "considerable literature available to the medical community" since the 1940's which suggested a causal connection between plaintiff's disease and the drug at issue, although the plaintiff may not have learned that her condition was caused by the drug until 1983).
Plaintiff's medical records are also properly before the Court for purposes of this motion. Medical records are admissible under Federal Rules of Evidence 803(4) and 803(6), and may be considered on a motion for summary judgment. See Hughes v. Joliet Correctional Center, 931 F.2d 425, 428 (7th Cir.1991). Further, to the extent there has been no foundation established for the records because defendant has not submitted an affidavit from their custodian(s), the records may nonetheless be considered because (i) there is no showing the records would not be admissible at trial; (ii) plaintiff does not dispute their authenticity or reliability, and (iii) the records merely serve to confirm plaintiff's deposition testimony concerning the diagnosis and treatment of her condition. Cf. Walker, 850 F.2d at 435 ("if a party fails to challenge hearsay evidence submitted to the court, the court does not commit error in considering such evidence.")
The Court now turns to the merits of defendant's motion based on the statute of limitations. A federal court implementing its diversity jurisdiction applies the law of the forum state when ruling on issues concerning statutes of limitation. Nettles v. American Tel. and Tel. Co., 55 F.3d 1358, 1362 (8th Cir.1995). Under Missouri law, the applicable statute of limitations in a personal injury action is five years from the date of accrual. R.S.Mo. § 516.120(4) (1994).[3] Under R.S.Mo. § 516.100, a claim is deemed to accrue not "when the wrong is done or the technical breach of ... duty occurs, but when the damage resulting therefrom is sustained and capable of ascertainment...."
The phrase "capable of ascertainment" is construed to mean "the moment that plaintiff's damages are substantially complete." Lockett v. Owens-Corning Fiberglas, 808 S.W.2d 902, 907 (Mo.App.E.D. 1991). Where the damage is a physical ailment, it is "sustained and capable of ascertainment, at the latest" when (i) it is diagnosed, and (ii) a theory as to its cause is *567 ascertainable. Lockett, 808 S.W.2d at 907; see also King v. Nashua Corp., 763 F.2d at 333; Ahearn, 729 S.W.2d at 503. This is an objective test which focuses on the damage and not on the discovery of its cause. King, 763 F.2d at 333; Jepson v. Stubbs, 555 S.W.2d 307, 312-13 (Mo. banc 1977); Ahearn, 729 S.W.2d at 503.
In this case, the undisputed facts presented by defendant establish that plaintiff's alleged injuries, i.e., fallopian tube damage and resulting infertility, were diagnosed more than ten years before plaintiff filed this action. Plaintiff was aware in 1981 following the surgical procedures performed by Dr. Bale that she had tubal blockage and was infertile as a result. Plaintiff testified that during the period 1980 to 1986 she was diagnosed with all the conditions for which she seeks recovery in this action. Defendant has also established that plaintiff's theory of the cause of her injury was ascertainable more than five years before plaintiff filed this action. The medical texts establish and plaintiff has not controverted that the medical community was aware in the early to mid 1980's of a possible link between the conditions for which plaintiff seeks recovery and IUD use. Thus, plaintiff's injuries were "sustained and capable of ascertainment" more than five years before this action was filed, and her action is time barred.
Defendant has met its burden to establish that no material facts remain which preclude the entry of summary judgment in its favor on the issue of the statute of limitations. City of Mt. Pleasant, 838 F.2d at 273. The burden then shifted to plaintiff, who failed to set forth affirmative evidence and specific facts showing there is a genuine dispute on the issue. Anderson v. Liberty Lobby, Inc., 477 U.S. at 249, 106 S.Ct. at 2510-11.
The cases on which plaintiff relies do not compel a contrary result. Each is factually and legally distinguishable from the present case. In Elmore v. Owens-Illinois, Inc., 673 S.W.2d 434, 436 (Mo. banc 1984) and Ray v. Upjohn Co., 851 S.W.2d 646, 650-51 (Mo. App.S.D.1993), the plaintiffs' causes of action were held not to accrue until their conditions were diagnosed by physicians, although each had known earlier that he was ill and that his illness might have been caused by substances to which he was exposed in the workplace. Renfroe v. Eli Lilly & Co., 686 F.2d 642, 647-48 (8th Cir.1982), concerned plaintiffs with cervical cancer whose mothers had taken diethylstilbestrol ("DES") while pregnant with them. The Eighth Circuit held it would be unfair to hold that plaintiffs' causes of action accrued when their cancers were diagnosed because no one in the medical community at that time was aware of the DES-cervical cancer link, because it was impossible to ascertain the likely cause of the injury.
Contrary to plaintiff's argument, the Elmore, Ray and Renfroe decisions do not establish a subjective discovery rule in Missouri, but instead affirm the rule that a plaintiff's cause of action accrues for statute of limitations purposes at the latest when (i) the injury is diagnosed, and (ii) a causal theory is capable of ascertainment. As the rule is applied in this case, the time of plaintiff's diagnosis was 1981, fourteen years before plaintiff's action was filed, and a causal theory was capable of ascertainment by at least the mid-1980's. The statute therefore began to run, though plaintiff did not become aware of the possible causal connection between her IUD use and her injuries until 1994. Compare King v. Nashua Corp., 763 F.2d at 333; Lockett, 808 S.W.2d at 906-08; Ahearn, 729 S.W.2d at 503-04.
Finally, the Court finds that all of plaintiff's claims are time barred. Defendant contends that the five-year statute of limitations of R.S.Mo. § 516.120(4) applies to all of plaintiff's claims, as it governs all personal injury claims against product manufacturers, including claims for fraud, conspiracy and breach of warranty asserted in a products liability action. Defendant cites Renfroe, 686 F.2d at 645-47 (five-year limit of R.S.Mo. § 516.120(4) applied to plaintiffs' products liability claims based on negligence per se, negligence, breach of express and implied warranty, fraud and deceit, strict liability, and conspiracy to defraud and deceive); In re Tetracycline Cases, 729 F.Supp. at 664 (R.S.Mo. § 516.120(4) applies to personal injury actions against product manufacturers); Witherspoon v. General Motors Corp., 535 F.Supp. 432, 434 (W.D.Mo.1982) (under Missouri *568 law, an action for personal injuries arising from a breach of implied warranty is not governed by the four-year Uniform Commercial Code statute of limitations, but by the five-year statute of limitations for action for personal injuries); and Lockett, 808 S.W.2d at 906-07 (personal injury plaintiff's claim sounds in tort and is governed by five-year statute of limitations).
The Court agrees with defendant that all of plaintiff's claims are barred by the five-year statute of limitations of R.S.Mo. § 516.120(4). Moreover, plaintiff's claims would be time barred even if the Court were to apply the Missouri statutes of limitation governing actions for breach of warranty, R.S.Mo. §§ 400.2-725(2) and (4), and fraud, R.S.Mo. § 516.120(5).
As previously noted, the Missouri Uniform Commercial Code breach of warranty statute of limitations is four years. A cause of action for breach of warranty accrues at the time of delivery of the product, regardless of the aggrieved party's lack of knowledge of the breach, except in cases where the warranty unambiguously indicates the manufacturer is warranting the future performance of the good for a specific period of time. R.S.Mo. § 400.2-725(2); see also R.W. Murray Co. v. Shatterproof Glass Corp., 697 F.2d 818, 823 (8th Cir.1983); May v. AC & S, Inc., 812 F.Supp. 934, 944 (E.D.Mo.1993). In this case, the Cu-7 IUD was delivered to plaintiff in 1976, nineteen years before this action was filed. Plaintiff does not allege any express warranty as to future performance for a specific period of time in connection with the Cu-7. Therefore, under R.S.Mo. § 400.2-725(2) and the cases cited above, plaintiff's breach of warranty claims accrued in 1976 and expired in 1980.
The Missouri fraud statute of limitations is a five-year statute, which provides a maximum of ten years for discovery of fraud and filing of suit within five years after the discovery. R.S.Mo. § 516.120(5). Under this statute, there is an absolute outside limitation period of fifteen years for filing suit after commission of the fraud. Hines v. A.O. Smith Harvestore, Inc., 880 F.2d 995, 997 (8th Cir.1989); May v. AC & S, Inc., 812 F.Supp. at 946; Berry v. Dagley, 484 S.W.2d 182, 184 (Mo.1972). In this case, the alleged fraud occurred in 1976 when plaintiff had the Cu-7 IUD was delivered to plaintiff. Thus, any fraud claim was time barred in 1991, regardless of the time of discovery.
Conclusion. For the foregoing reasons, the Court concludes that defendant's Motion for Summary Judgment on Statute of Limitations Grounds should be granted and judgment should be entered in favor of defendant and against plaintiff. It is therefore not necessary for the Court to reach defendant's remaining two motions for summary judgment based on failure of proof and proximate cause grounds.
Accordingly,
IT IS HEREBY ORDERED that plaintiff's motion to strike exhibits is DENIED. [Doc. 36-1]
IT IS FURTHER ORDERED that defendant's Motion for Summary Judgment on Statute of Limitations Grounds is GRANTED. [Doc. 32]
IT IS FURTHER ORDERED that defendant's Motion for Summary Judgment on Failure of Proof Grounds and Motion for Summary Judgment on Proximate Cause Grounds are DENIED as moot. [Doc. 33, 49]
An appropriate judgment will accompany this memorandum and order.
NOTES
[1] The Court relies primarily on the statement of uncontroverted material fact presented by defendant in its Motion for Summary Judgment on Statute of Limitations Grounds. This statement of facts is supported by the deposition testimony of plaintiff and various exhibits. Plaintiff has not disputed defendant's statement of the facts other than (i) by objecting that defendant's statement of the facts is set forth in defendant's memorandum in support rather than the motion itself, and that defendant's statement of facts is qualified because it deems the facts uncontroverted only for purposes of the summary judgment motion; and (ii) by moving to strike the exhibits attached to defendant's memorandum in support as being hearsay and without foundation, particularly articles from medical texts and plaintiff's medical records. Plaintiff's motion to strike will be denied for the reasons discussed below.
[2] Nulliparous is defined as, "Never having borne children." Stedman's Medical Dictionary (26th ed., 1995), p. 1230.
[3] All subsequent statutory references are to the Revised Statutes of Missouri, 1994 edition, unless otherwise noted.