GRUENDER, Circuit Judge.
 

 Merck & Company, Inc. ("Merck") manufactured and distributed Vioxx as a medication to relieve pain and inflammation between 1999 and 2004. Plaintiff Jo Levitt began taking Vioxx during the summer of 1999. She suffered cardiovascular injuries in March and May of 2000 while taking the medication. Her doctor continued to prescribe her Vioxx until 2002, around the time Merck changed its label to disclose a risk of cardiovascular injuries associated with the use of Vioxx. Merck removed Vioxx from the market in 2004.
 

 Levitt filed a personal injury lawsuit against Merck on September 29, 2006. Merck filed a motion for judgment on the pleadings, arguing that Levitt's claims were barred by Missouri's five-year statute of limitations. The district court granted Merck's motion and determined as a matter of law that, because "Plaintiff's claims accrued prior to September 2001," her September 29, 2006 suit was time-barred. Levitt appealed.
 

 We review a district court's grant of judgment on the pleadings
 
 de novo.
 

 Clemons v. Crawford
 
 ,
 
 585 F.3d 1119
 
 , 1124 (8th Cir. 2009). The movant has the burden of "clearly establish[ing] that there are no material issues of fact and that it is entitled to judgment as a matter of law."
 
 Porous Media Corp. v. Pall Corp.
 
 ,
 
 186 F.3d 1077
 
 , 1079 (8th Cir. 1999). At this stage of the proceedings, we view all facts pleaded by Levitt as true and grant her all reasonable inferences.
 
 See
 

 Clemons
 
 ,
 
 585 F.3d at 1124
 
 .
 

 Judgment on the pleadings may be granted "on the basis that the governing ... statute of limitations expired."
 
 Thach v. Tiger Corp.
 
 ,
 
 609 F.3d 955
 
 , 960 (8th Cir. 2010). The parties agree that Missouri's statute of limitations applies, and we review the district court's determinations of Missouri law
 
 de novo
 
 .
 
 See
 

 Jurrens v. Hartford Life Ins. Co.
 
 ,
 
 190 F.3d 919
 
 , 922 (8th Cir. 1999). "The party asserting the affirmative defense of the running of the applicable statute of limitations has the burden of not only pleading but proving it."
 
 Lomax v. Sewell
 
 ,
 
 1 S.W.3d 548
 
 , 552 (Mo. Ct. App. 1999). In Missouri, the statute of limitations for personal injury claims is five years after the cause of action accrues.
 
 Mo. Ann. Stat. § 516.120
 
 . "[T]he cause of action shall not be deemed to accrue when the wrong is done or the technical breach of contract or duty occurs, but when the damage resulting therefrom is sustained and is capable of ascertainment."
 
 Mo. Ann. Stat. § 516.100
 
 .
 

 The Missouri Supreme Court defined "capable of ascertainment" as when "the evidence [is] such to place a reasonably prudent person on notice of a potentially actionable injury."
 
 Powel v. Chaminade Coll. Preparatory, Inc.
 
 ,
 
 197 S.W.3d 576
 
 , 582 (Mo. 2006) (emphasis removed). This "objective" test is from the standpoint of a "reasonable person in [plaintiff's] situation."
 

 Id.
 

 at 584, 586
 
 . Both the "character of the condition ... and its cause" must be capable of ascertainment.
 
 Elmore v. Owens-Illinois, Inc.
 
 ,
 
 673 S.W.2d 434
 
 , 436 (Mo. 1984). "[W]hen contradictory
 or different conclusions may be drawn from the evidence as to whether the statute of limitations has run, it is a question of fact for the jury to decide."
 
 Powel
 
 ,
 
 197 S.W.3d at 585
 
 .
 

 We conclude that there remains such "a question of fact for the jury to decide" because "contradictory or different conclusions may be drawn" as to whether "the evidence was such to place a reasonably prudent person on notice of a potentially actionable injury" before September 29, 2001.
 
 See
 

 id.
 

 at 584-85
 
 . Between 1999 and 2004, scientists became increasingly confident that the use of Vioxx entailed a risk of cardiovascular injuries. Beginning in early 2000, the media covered reports of a possible link between Vioxx and cardiovascular incidents.
 
 See, e.g.
 
 , Edward R. Silverman,
 
 Merck Shares Fall on Vioxx Study, Star-Ledger (Newark, N.J.)
 
 , April 29, 2000, at 17; Rita Rubin,
 
 Data: Vioxx Might Raise Heart Risk
 
 ,
 
 USA Today
 
 , February 9, 2001;
 
 Could Vioxx and Celebrex Increase Heart Risk?
 
 ,
 
 Wash. Post
 
 , March 13, 2001, at T6. In late 2000, the Vioxx Gastrointenstinal Outcomes Research (VIGOR) study indicated a potential risk of myocardial infarction associated with the use of Vioxx.
 
 See
 
 Claire Bombardier
 
 et al.
 
 ,
 
 Comparison of Upper Gastrointestinal Toxicity of Rofecoxib and Naproxen in Patients with Rheumatoid Arthritis
 
 ,
 
 343
 
 New Eng. J. Med.
 
 1520
 
 , 1523 (2000).
 

 But the scientific community's analysis remained tentative. In August 2001, a peer-reviewed article in the
 
 Journal of the American Medical Association
 
 analyzed "all published, English-language, randomized, double-blind trials of COX-2 inhibitors [like Vioxx ] from January 1998 to February 2001" and concluded that "the available data raise[d] a cautionary flag about the risk of cardiovascular events with COX-2 inhibitors" such as Vioxx. Debabrata Mukherjee
 
 et al.
 
 ,
 
 Risk of Cardiovascular Events Associated with Selective COX-2 Inhibitors
 
 ,
 
 286
 
 JAMA
 
 954
 
 , 954-955 (2001). But this comprehensive analysis recognized "significant limitations":
 

 There remains considerable uncertainty in any post hoc analysis. The patient populations in these trials ... with rheumatoid arthritis have a higher risk of MI [myocardial infarction ]. ... Currently, no data exist on cardiovascular safety for the sporadic, intermittent use of these agents by individuals for musculoskeletal pain, which appears to be the most frequent pattern of use. ... [D]efinitive evidence of [a cardiovascular] adverse effect will require a prospective randomized clinical trial.
 

 Id.
 

 at 958
 
 . And Merck publicly argued at that time that no sound conclusions relating to cardiovascular risks could be drawn from the available studies.
 
 See
 
 Thomas M. Burton & Gardiner Harris,
 
 Note of Caution: Study Raises Specter of Cardiovascular Risk For Hot Arthritis Pills-Vioxx and Celebrex Marketers Dispute the Research, Sought to Downplay It-A Spurned Appeal to JAMA
 
 ,
 
 Wall St. J.
 
 , August 22, 2001, at A1.
 

 The Missouri Supreme Court has not addressed how
 
 Powel
 
 's "reasonably prudent person" test applies where an injury was only beginning to be linked to a certain cause by developing science. Therefore, "we must attempt to predict what the court would decide if it were to address the issue" based on "relevant state precedent, analogous decisions, considered dicta, ... and any other reliable data."
 
 Jurrens v. Hartford Life Ins. Co.
 
 ,
 
 190 F.3d 919
 
 , 922 (8th Cir. 1999).
 

 The Missouri Court of Appeals's recent decision in
 
 Giles v. Carmi Flavor & Fragrance Co., Inc.
 
 is most instructive.
 
 475 S.W.3d 184
 
 (Mo. Ct. App. 2015).
 
 Giles
 
 involved a worker at a food facility who was exposed to diacetyl, a chemical used in butter flavoring. In 1999 Giles began to
 experience lung problems, including difficulty breathing, shortness of breath, coughing, and wheezing.
 

 Id.
 

 at 185
 
 . Around 2001 and 2002, Giles and his primary care physician had actual knowledge about "the possible connection between butter flavoring and certain lung diseases," but his doctor did not make a diagnosis on this basis.
 

 Id.
 

 at 185
 
 . In 2004, Giles switched primary care physicians, and between 2004 and 2011 his new doctor diagnosed Giles with dyspnea (shortness of breath) and asthma.
 

 Id.
 

 at 186-87
 
 . Finally, in 2011, he was referred to a third doctor who diagnosed Giles with bronchiolitis obliterans caused by diacetyl.
 

 Id.
 

 at 187
 
 .
 

 The trial court in
 
 Giles
 
 granted summary judgment based on Missouri's five-year statute of limitations. The Missouri Court of Appeals reversed, finding that there was a question of fact as to whether the cause of Giles's lung condition was capable of ascertainment when "the scientific community [was] only beginning to piece together a connection between the bronchiolitis obliterans and diacetyl."
 

 Id.
 

 at 194
 
 .
 

 In dismissing Levitt's claims, the district court relied on two pre-
 
 Powel
 
 cases. In
 
 Ahearn v. Lafayette Pharmacal, Inc.
 
 , the plaintiff exhibited symptoms of a back condition in 1975 but "did not learn of the causal relationship between the drug and the disease until 1983."
 
 729 S.W.2d 501
 
 , 503 (Mo. Ct. App. 1987)
 
 .
 
 She filed her lawsuit in 1984.
 

 Id.
 

 The Missouri Court of Appeals determined that the statute of limitations barred her lawsuit because "the medical community, as early as the 1940's, was aware of the possible causation link" and "[t]here was considerable literature available to the medical community which suggested this causal connection."
 

 Id.
 

 Likewise, in
 
 Buttice v. G.D. Searle & Co.
 
 , the plaintiff had an intrauterine device (IUD) inserted in 1976 and removed a year later.
 
 938 F.Supp. 561
 
 , 564 (E.D. Mo. 1996). Between 1976 and 1983, she suffered from a pelvic infection, blocked fallopian tubes, and infertility.
 

 Id.
 

 at 565
 
 . In 1995 she filed a lawsuit alleging that her IUD had caused these injuries.
 

 Id.
 

 The court determined that her injuries were "capable of ascertainment more than five years before" in part because "[b]y the early to mid 1980's, medical texts regularly referenced the reported association between IUD use and pelvic inflammatory disease... and the resulting possibility of infertility."
 
 Id
 
 . at 565, 567.
 

 Relying on
 
 Buttice
 
 and
 
 Ahearn
 
 , the district court concluded that the "case law ...
 
 only
 
 requires knowledge of 'a possible link' between the injury and product."
 
 Levitt v. Merck Sharp & Dohme Corp.
 
 ,
 
 250 F.Supp.3d 383
 
 , 387-88 (W.D. Mo. 2017) (emphasis added) (quoting
 
 Buttice
 
 ,
 
 938 F.Supp. at
 
 567 ). Such a standard was not specifically discussed in
 
 Powel
 
 , and it was rejected in
 
 Giles
 
 .
 
 475 S.W.3d at 193
 
 ("[W]e reject the argument that summary judgment should be affirmed because the medical community was aware of the potential that diacetyl exposure could cause lung disease in 2001 and thus that Giles was on notice of a potentially actionable claim at that time.").
 
 Giles
 
 distinguished
 
 Ahearn
 
 and
 
 Buttice
 
 as cases where "the science had long provided a causal connection between the diagnosis and the alleged wrong" (
 
 Ahearn
 
 ) and where a "causal theory [for plaintiff's injury] was capable of ascertainment" about a decade before the cause of action was filed (
 
 Buttice
 
 ).
 
 [2]
 

 Giles
 
 ,
 
 475 S.W.3d at 193-94
 
 .
 

 But here, as in
 
 Giles
 
 , the causal theory linking Vioxx to heart problems was only beginning to emerge in the scientific community before September 29, 2001. Therefore, we predict that the Missouri Supreme Court would conclude that mere knowledge in the medical community of a possible link does not
 
 as a matter of law
 
 place "a reasonably prudent person in [Levitt's] position ... on notice of a potentially actionable injury."
 
 See
 

 Giles
 
 ,
 
 475 S.W.3d at 193
 
 .
 
 Powel
 
 focuses on when "the evidence was such to place a reasonably prudent person on notice of a potentially
 
 actionable
 
 injury."
 
 [3]
 

 Powel
 
 ,
 
 197 S.W.3d at 582
 
 (emphasis added). As
 
 Giles
 
 and
 
 Powel
 
 indicate, Missouri law treats this as "a question of fact for the jury to decide" when "contradictory or different conclusions may be drawn" concerning the implications of the scientific evidence for a reasonable plaintiff.
 
 Giles
 
 ,
 
 475 S.W.3d at 194
 
 (quoting
 
 Powel
 
 ,
 
 197 S.W.3d at
 
 585 ).
 

 Here, the state of the scientific literature connecting Vioxx to cardiovascular injuries before September 29, 2001 was more akin to
 
 Giles
 
 than to
 
 Ahearn
 
 and
 
 Buttice
 
 because at that time science was only "beginning to piece together" a causal theory.
 
 See
 

 id.
 
 at 194. Most compellingly, only one month before September 29, 2001, the American Medical Association's flagship journal found that "considerable uncertainty" remained as to the apparent connection between Vioxx and cardiovascular injuries, "no data" existed on whether "the most frequent pattern of use" of Vioxx caused any heart problems at all, and more studies were needed.
 
 See
 
 Mukherjee
 
 et al.
 
 ,
 
 supra
 
 , at 958. In addition, in the month prior to September 29, 2001, Merck's representatives and scientists were publicly contesting the validity of the scientific claims suggesting a possible heart risk from the use of Vioxx, and Merck had yet to add any warnings of cardiovascular risks to Vioxx's label.
 

 To be sure, the national news media covered reports of potential heart risks from taking Vioxx starting in 2000, and some plaintiffs filed cases in the months before September 2001 alleging that Vioxx caused heart problems.
 
 See
 
 ,
 
 e.g.
 
 , J.A. 931,
 
 Reid v. Merck & Co.
 
 , No. BC254630 (Cal. Super. Ct. July 23, 2001). Such publicly available information is relevant to whether "notice of a potentially actionable injury" existed, but in this case it is not determinative
 
 as a matter of law
 
 .
 
 [4]
 

 See
 

 Giles
 
 ,
 
 475 S.W.3d at 193-94
 
 ("The record simply does not bear out, as a matter of law, that Giles could have maintained the action to a successful result prior to 2007, unlike in
 
 Ahearn
 
 ...."). Thus, Merck failed to "clearly establish[ ] that there are no material issues of fact,"
 
 Porous Media Corp.
 
 ,
 
 186 F.3d at 1079
 
 , as to "whether the statute of limitations has run,"
 
 Powel
 
 ,
 
 197 S.W.3d at 585
 
 .
 

 We do not require definitive proof of causation, a consensus in the scientific community, or an admission by the putative defendant for the statute of limitations
 to begin to run. But with all reasonable inferences given to Levitt, and following the most recent and "relevant state precedent, analogous decisions, considered dicta, ... and any other reliable data" to predict what the Missouri Supreme Court would decide after
 
 Powel
 
 , we conclude that judgment on the pleadings was improper.
 
 See
 

 Jurrens
 
 ,
 
 190 F.3d at 922
 
 . As
 
 Giles
 
 emphasizes, "[a]lthough it may be the case that a reasonably prudent person in [plaintiff's] position would have been on notice of a potentially actionable injury ... , this conclusion does not follow as a matter of law."
 
 Giles
 
 ,
 
 475 S.W.3d at 193
 
 . We thus reverse the district court's dismissal on this basis and remand the case for further proceedings consistent with this opinion.
 

 Giles
 
 also cites a federal district court opinion that questioned
 
 Ahearn
 
 's viability and concluded "that medical community knowledge of possible causation is inconclusive" for statute of limitations purposes.
 
 Giles
 
 ,
 
 475 S.W.3d at
 
 194 n.9 (quoting
 
 Miller v. Mobay Corp.
 
 ,
 
 741 F.Supp. 177
 
 , 178 (W.D. Mo. 1990) ).
 

 As
 
 Giles
 
 emphasizes, the "test to determine when a cause of action has accrued is to ascertain the time when plaintiff could have first maintained the action to a successful result."
 
 475 S.W.3d at 194
 
 (quoting
 
 Ahearn
 
 ,
 
 729 S.W.2d at
 
 503 ).
 

 The dissent argues that this is a question of law because the "the standard 'is an objective one' " and "[t]here is no dispute about the scientific literature, media reports, corporate annual reports, and publicly-filed lawsuits that were in the public domain before September 2001."
 
 Post
 
 , at 1177. We agree that the existence of such materials is undisputed, as it was undisputed
 
 Giles
 
 . But
 
 Giles
 
 shows that the
 
 import
 
 of such materials can be reasonably disputed. In such a scenario,
 
 Powel
 
 and
 
 Giles
 
 call upon the jury to decide whether a "reasonably prudent person" in plaintiff's position-as opposed to Levitt herself-was on "notice of a potentially actionable injury."
 
 Giles
 
 ,
 
 475 S.W.3d at 189
 
 (quoting
 
 Powel
 
 ,
 
 197 S.W.3d at
 
 582 ).