# United States Court of Appeals
### For the Eighth Circuit
_____

No. 21-2028
_____

Gregory Lynn Burdess; Lisa Burdess

*Plaintiffs - Appellants*

v.

Cottrell, Inc.

*Defendant - Appellee*
_____

Appeal from United States District Court
for the Eastern District of Missouri - St. Louis
_____

Submitted: September 20, 2022
Filed: November 15, 2022
_____

Before SHEPHERD, KELLY, and GRASZ, Circuit Judges.
_____

SHEPHERD, Circuit Judge.

Gregory Lynn Burdess woke up in an Illinois motel room without any feeling in his arms; he was later diagnosed in Missouri with bilateral shoulder impingement syndrome. Four years later, Burdess and his wife, Lisa Burdess, filed this action against Cottrell, Inc., the manufacturer of the ratchet system that allegedly caused Burdess's injury. In granting Cottrell's motion for summary judgment, the district court found that Illinois's two-year statute of limitations applied to Burdess's cause

of action instead of Missouri's five-year statute of limitations, thus barring Burdess's and his wife's claims. Burdess and his wife appeal, arguing that the district court erred in not applying Missouri's statute of limitations. Having jurisdiction under 28 U.S.C. § 1291, we reverse, concluding that the matter is a fact question for the jury to decide.

I.

Since 2001, Burdess has worked as a car hauler for Jack Cooper Transport Company (JCT)—a registered transporter of motor vehicles that regularly transports vehicles across the nation—at its Wentzville, Missouri terminal. Burdess describes his primary job duties as loading six to nine vans or large SUVs onto a vehicle hauler, securing the vehicles, and driving the load to another state. JCT uses vehicle haulers manufactured by Cottrell, which utilize a "tie-down rachet system." According to Burdess, to secure the vehicles with this system, he attaches eight-to-ten-pound chains to four places on the frame of each vehicle and then tightens each chain by pulling down on a "tie-down" bar connected to the ratchet system, which requires Burdess to jerk his arms forcefully at or above his shoulders. He estimates that pulling down on the tie-down bar requires him to exert roughly 100 pounds of pressure.

Burdess's job has inflicted a heavy toll on his physical health. In 2001, Burdess sustained an injury to his back while bending and squatting as he worked on a vehicle. In 2002, Burdess experienced a sudden pain in his right shoulder when he pulled on a tie-down bar while securing a load of vehicles. Also in 2002, Burdess struck his head on a steel beam and sustained a laceration, which required sutures. In 2003, Burdess fell backwards off of his truck and sustained injuries to his knee. In 2007, Burdess again noted pain in his right shoulder but apparently did not receive any treatment. In 2008, Burdess developed a sudden pain in his left hand and elbow when he reached up to tie cords together. Though he was diagnosed with a left elbow and forearm strain, he was able to return to work. In 2012, Burdess complained of

pain in a finger on his left hand. There was no numbness, but the pain was aggravated by grasping.

On April 4, 2013, Burdess commenced hauling a load of five to six vehicles from Wentzville, Missouri, to Janesville, Wisconsin. He loaded and secured the vehicles using the above-described ratchet system at about 9:00 a.m. that morning. Burdess planned to drive roughly six hours to McLean, Illinois, and complete his haul the following day. He arrived in McLean between 3:00 p.m. and 5:00 p.m., ate dinner, and went to bed around 9:00 p.m. or 10:00 p.m. Burdess claims he went to sleep that evening with no bodily pain or related issues, but at about 3:00 a.m. on April 5, 2013, he woke up unable to move his arms, which were completely numb. Roughly three hours passed before Burdess regained feeling in his arms. He then called the Wentzville terminal and informed JCT of his condition. Burdess managed to complete his haul to Janesville, but declined JCT's request to pick up another load on his way back to Wentzville, citing growing pain in his shoulders.

Three weeks later, on April 26, 2013, Burdess visited a physician regarding the pain and was diagnosed with bilateral impingement syndrome. According to Burdess, when the physician asked him what might have caused the injury, Burdess replied, "[T]he only thing I can think of is pulling down on the [tie-down] bar," and further described his job duties. The physician told Burdess that "heavy repetitive motion consistently over the years will tear up your shoulders, elbows[,] and hands." Burdess told another physician that he had been having shoulder problems for about five to six years prior to the incident and that his left shoulder felt better while he was not working; the physician likewise found Burdess's job activities were the prevailing factor in Burdess's injuries.

More than four years later, on May 16, 2017, Burdess filed suit, claiming that Cottrell's ratchet system was responsible for his injuries. He alleged claims for (1) strict liability related to defective design, (2) negligence, and (3) breach of implied warranty and sought punitive damages. Burdess's wife joined the suit, alleging loss of consortium. Cottrell filed a motion to dismiss, arguing that Burdess's claims were

-3-

time-barred by the statute of limitations. According to Cottrell, Burdess's claim "originated" in Illinois, which, under Missouri's borrowing statute, required the "borrowing" of the applicable Illinois statute of limitations (two years) as opposed to Missouri's (five years). The district court denied the motion, noting that it was not clear whether Burdess's injuries originated in Illinois based on only the factual allegations of the complaint. Cottrell subsequently converted its motion to dismiss to a motion for summary judgment. Based on Burdess's testimony that he had experienced no difficulties with his hands, wrists, arms, or shoulders prior to the April 5, 2013 manifestation of injury—and without any evidence of Burdess's previous injuries or his five to six years of shoulder pain—the district court found that "a reasonably prudent person waking up in the middle of the night with numbness in his arms would not conclude that the numbness was the result of an actionable injury." Thus, the district court rejected the application of the shorter Illinois statute of limitations, and denied Cottrell's motion. Cottrell filed two subsequent motions to reconsider, challenging the district court's interpretation of Missouri's borrowing statute. The district court clarified the legal standard but nonetheless maintained its previous position and denied each of Cottrell's motions.

After the denial of these motions, the parties engaged in further discovery. Through this process, Burdess's past injuries (described above) came to light. While Burdess testified in his deposition that he did not recall these injuries, he did not deny the numerous medical reports proffered by Cottrell. Discovery also revealed Burdess's statement to the physician that he had experienced gradual onset shoulder pain the past five to six years. In light of these new facts, Cottrell filed a second motion for summary judgment. After considering the factual developments, the district court concluded that Burdess's cause of action originated in Illinois:

> After extensive consideration, this [c]ourt finds as a matter of law that a reasonably prudent person in Burdess'[s] shoes would be on notice of a potentially actionable injury upon experiencing three hours of complete arm numbness, including hours on the floor unable to get up, and subsequent shoulder soreness. Three key, undisputed facts compel this conclusion. First, Burdess performed a manually intensive

-4-

job frequently requiring him to exert substantial overhead force. Second, and more importantly, Burdess had already suffered multiple work-related injuries to his upper extremities, including from pulling the tie-down bar at issue in this litigation. Finally, Burdess'[s] experience in the Illinois motel room was clearly indicative of substantial injury, the extent of which a reasonable person would promptly attempt to ascertain (as Burdess did). Burdess may not have known the precise nature of his legal claim or medical diagnosis, but such particular knowledge is not necessary to trigger the statute of limitations. A reasonably prudent person with a manually intensive job and history of work-related injuries is on notice of a potentially actionable injury when they knowingly suffer a substantial medical injury likely connected to their work.

R. Doc. 115, at 12. Accordingly, the district court found Burdess's and his wife's claims barred by Illinois's two-year statute of limitations and granted summary judgment in favor of Cottrell.

Burdess and his wife appeal,[1] arguing that the district court erred in finding that his cause of action originated in Illinois by ignoring longstanding Missouri case law and relying on isolated injuries throughout his career.

II.

We review de novo a grant of summary judgment. See Togerson v. City of Rochester, 643 F.3d 1031, 1042 (8th Cir. 2011) (en banc). "Summary judgment is proper 'if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue of material fact and that the movant is entitled to judgment as a matter of law.'" Id. (citation omitted). When reviewing a motion for summary judgment, "facts must be viewed in the light most favorable to the nonmoving party [but] only if there is a genuine dispute as to those facts." Id. (citation omitted).

---

[1]Because plaintiffs' claims turn on facts related only to Burdess, we refer solely to him in discussing plaintiffs' claims and arguments below.

This case turns on when—or *where* in this context—the statute of limitations began to run on Burdess's cause of action, which depends upon the proper interpretation and application of Missouri's borrowing statute. When tasked with interpreting and applying Missouri state law, "we are bound by the decisions of the Supreme Court of Missouri." Wivell v. Wells Fargo Bank, N.A., 773 F.3d 887, 897 (8th Cir. 2014) (citation omitted). "Where the [Supreme Court of Missouri] has not spoken, 'we must predict how the court would rule, and we follow decisions from the intermediate state courts when they are the best evidence of Missouri law.'" Id. (citation omitted). Importantly for the purposes of summary judgment, "the statute of limitations issue can be decided by the court as a matter of law" where the relevant facts are not disputed. Powel v. Chaminade Coll. Preparatory, Inc., 197 S.W.3d 576, 585 (Mo. 2006) (en banc). "However, when contradictory or different conclusions may be drawn from the evidence as to whether the statute of limitations has run, it is a question of fact for the jury to decide." Id. (citation omitted); see also Levitt v. Merck & Co., Inc., 914 F.3d 1169, 1171-72 (8th Cir. 2019) (stating the same when applying Missouri's capable-of-ascertainment test).

Missouri's "borrowing" statute states, "Whenever a cause of action has been fully barred by the laws of the state . . . in which it originated, said bar shall be a complete defense to any action thereon, brought in any of the courts of [Missouri]." Mo. Rev. Stat. § 516.190. In essence, the statute prevents plaintiffs from forum shopping for a more favorable statute of limitations in Missouri by barring the claim if such claim would have been time-barred in the state where the cause of action "originated." Patch v. Playboy Enters., Inc., 652 F.2d 754, 757 (8th Cir. 1981) (per curiam). "The term 'originated' within this statute has been defined to mean 'accrued.'" Couzens v. Donohue, 854 F.3d 508, 515 (8th Cir. 2017). Under Missouri law, a "cause of action shall not be deemed to accrue when the wrong is done . . . but when the damage resulting therefrom is sustained and *is capable of ascertainment*." Mo. Rev. Stat. § 516.100 (emphasis added).

In Powel, the Supreme Court of Missouri held that the capable-of-ascertainment standard is an objective test, determined by "when the 'evidence was

such to place a reasonably prudent person on notice of a potentially actionable injury.'" 197 S.W.3d at 583 (citation omitted). Accordingly, in the context of Missouri's borrowing statute, we look to where the plaintiff was when the evidence was such to place a reasonably prudent person on notice of a potentially actionable injury. See, e.g., Benton v. Cracker Barrel Old Country Stores, Inc., 436 S.W.3d 632, 634 (Mo. Ct. App. 2014) ("[A] cause of action . . . originates *where* damages are sustained and are capable of ascertainment." (emphasis added and omitted)).

> The issue is not when the injury occurred, or when plaintiff subjectively learned of the wrongful conduct and that it caused his or her injury, but when a reasonable person would have been put on notice that an injury and substantial damages may have occurred and would have undertaken to ascertain the extent of the damages.

Powel, 197 S.W.3d at 584.

The parties agree on the foregoing. However, Burdess argues that Missouri precedent requires that *both* the damages and its cause (that is, the injury) be capable of ascertainment before an action accrues. Under this standard, Burdess argues, his cause of action did not accrue until he was diagnosed with bilateral shoulder impingement syndrome on April 26, 2013, in Missouri and was able to connect his shoulder damage to Cottrell's ratchet system. Cottrell argues that Burdess places too much emphasis on his subjective knowledge of what caused his injury. Cottrell contends that under the above-stated objective standard, a reasonable person with Burdess's prior injuries would have been put on notice of the cause of his injury when Burdess woke up in the Illinois motel room unable to move his arms.

Historically, Missouri courts have looked to when a reasonably prudent person would have connected the damages to the cause thereof to determine when a plaintiff's cause of action originated. See Elmore v. Owens-Ill., Inc., 673 S.W.2d 434, 436 (Mo. 1984) (en banc) (finding that plaintiff's claim had not "originated" "until such diagnosis was made that the character of the condition (asbestosis) and its cause (breathing asbestos dust) first 'came together' for the plaintiff"); see also

Ray v. Upjohn Co., 851 S.W.2d 646, 650 (Mo. Ct. App. 1993) (stating that Missouri caselaw recognized that plaintiff's claim did not begin to accrue "until [he] was aware of his condition and its cause"); Grady v. Amrep, Inc., 139 S.W.3d 585, 589 (Mo. Ct. App. 2004) (finding that plaintiff "knew immediately that she was exposed to [the chemical] and that it caused her reactions"). We do not read Powel as altering the cause-prong of the test discussed in this line of cases. In Powel, the Supreme Court of Missouri did not discuss this line of cases, but it did rely on its decisions from the prior 40 years in clarifying Missouri's capable-of-ascertainment standard. 197 S.W.3d at 582. In doing so, the Powel court notably held that "the statute of limitations begins to run when the 'evidence was such to place a reasonably prudent person on notice of a *potentially actionable injury*'"—that is, "that *an injury* and substantial damages may have occurred." Id. at 582, 584 (emphasis added and omitted) (citation omitted). Accordingly, we read the Powel decision to contemplate not only that the plaintiff must objectively be on notice of the damages but also the underlying injury to satisfy Missouri's capable-of-ascertainment standard.

We also think it relevant that the Powel court stated that the evidence must be such that a reasonably prudent person must be on notice of a "potentially actionable" injury. Id. at 582 (emphasis omitted). An injury is "actionable" if it "[f]urnish[es] the legal ground for a lawsuit or other legal action." Actionable, Black's Law Dictionary (11th ed. 2019). Accordingly, it is not enough that the plaintiff objectively be on notice of sustained damage, he must also be objectively on notice that the damage is such that another party may potentially be held liable. See Behan v. Fireman's Ret. Sys. of St. Louis, 452 S.W.3d 218, 224 (Mo. Ct. App. 2014) (refusing to find that plaintiff's cause of action accrued when he exhibited "alcohol abuse, stress, and marital problems" because "there was no evidence of a causal connection between these issues and the May 2002 fire").

To be sure, courts since Powel have continued to recognize this causation requirement. See id. (finding that certain damages were not capable of ascertainment when plaintiff "was not aware and had no reason to know that the [injury] was the cause"); Giles v. Carmi Flavor & Fragrance Co., 475 S.W.3d 184, 193 (Mo. Ct. App.

-8-

2015) (finding that plaintiff's damages were not "as a matter of law" capable of ascertainment when two specialists were unable to connect plaintiff's damages to the injury, even though plaintiff speculated the causal connection); Levitt, 914 F.3d at 1174-75 (relying on Powel and reviewing whether the causal theory linking the injury to plaintiff's damage was capable of ascertainment when deciding that plaintiff's claim was not barred as a matter of law by Missouri law).

So, while it is true that in some cases causation cannot be established until the damage has been diagnosed, a medical diagnosis is not always necessary for the cause to be ascertainable. The Powel court reinforced that the capable-of-ascertainment test is an objective one, unaffected by when the plaintiff subjectively or actually learns that his damage is the result of a wrongful act. 197 S.W.3d at 584; see also State ex rel. Halsey v. Phillips, 576 S.W.3d 177, 180 (Mo. 2019) (en banc) ("[T]he capable of ascertainment test is an objective one . . . ." (alteration in original) (citation omitted)). Thus, while a reasonable person may not be on notice of his potentially actionable injury until his damages have been diagnosed and the cause is accordingly determined, a diagnosis is not a per se trigger for the capable-of-ascertainment test. See Giles, 475 S.W.3d at 189-92 (collecting Missouri cases and finding that while some cases required a diagnosis before a reasonable person would have been on notice of the injury, others made clear that "a cause of action can be capable of ascertainment prior to diagnosis"). Instead, the standard is exactly what the Powel court set forth: "when a reasonable person would have been put on notice that *an injury* and *substantial damages* may have occurred and would have undertaken to ascertain the extent of the damages," whether that is before, at, or after the moment of diagnosis. 197 S.W.3d at 584 (emphasis added).

Here, we must determine whether the "evidence was such to place a reasonably prudent person on notice of a potentially actionable injury" in Illinois, where Burdess woke up to complete numbness in his arms. Id. at 583 (citation omitted). In determining that Burdess's damages were capable of ascertainment on April 5, 2013, in Illinois, the district court relied on three facts: (1) that Burdess performed a manually intensive job, which frequently required him to exert

substantial overhead force; (2) that Burdess had suffered multiple work-related injuries to his upper extremities, one of which involved the tie-down bar at issue in this case; and (3) that Burdess's experience in the motel was one indicative of substantial damage. On these three facts, we cannot say *as a matter of law* that a reasonable person in Burdess's position would have been on notice of a potentially actionable injury in Illinois. See id. at 585 ("However, when contradictory or different conclusions may be drawn from the evidence as to whether the statute of limitations has run, it is a question of fact for the jury to decide." (citation omitted)).

First, while Burdess's job did require a significant amount of overhead work, this fact alone would not necessarily lead a reasonable person to believe that this type of injury would be connected to the Cottrell tie-down ratchet system because it is clear that Burdess's job in its entirety was detrimental to his physical health. There is nothing (notwithstanding his prior work-related injuries discussed below) in the record to definitively show any specific connection between the use of the Cottrell ratchet system and the injury to his shoulders.

While Burdess did tell his Missouri physician three weeks later that "pulling down on the bar" could have caused the slow onset of shoulder pain he had been experiencing, this does not show as a matter of law that the evidence was sufficient at the time when Burdess awoke in his motel room to put a reasonable person on notice of the potentially actionable injury. See Giles, 475 S.W.3d at 193 (declining to find that as a matter of law that plaintiff's claim accrued prior to his diagnosis even though he "wondered" whether his symptoms were due to his exposure to the at-issue chemical). Burdess also noted that his gradual onset of shoulder pain felt better once he had ceased working. Even assuming that this fact is sufficient to place a reasonable person on notice of the potentially actionable injury, see id. at 190-91 (noting that another Missouri court found that a plaintiff's damages were not capable of ascertainment as a matter of law merely because plaintiff "suffered symptoms [at work] but 'felt fine' as soon as he left his work place"), knowledge that the pain improved when he was not working was not available to Burdess in the Illinois motel room so as to put a reasonable person on notice at that time. Accordingly, we do not

find that this fact alone establishes that Burdess's claim originated in Illinois as a matter of law.

Second, the district court relied upon Burdess's past work-related injuries to link Burdess's job duties to the injuries at issue here. However, we do not find that the prior injuries are as indicative of a potentially actionable injury as the district court found them to be. Even considering only Burdess's upper-extremity injuries, most were distinct from the one at issue. For instance, Burdess's 2008 injury involved tying a cord, not the tie-down bar, and none of his injuries involved numbness. Only Burdess's 2002 injury was connected to the use of Cottrell's ratchet system, but the damage there manifested immediately, did not include numbness, and allowed Burdess to return to work shortly thereafter. Here, Burdess's shoulder numbness and subsequent pain resulted from Burdess's persistent use of the tie-down bar, manifested almost 18 hours after he loaded and secured the vehicles in Missouri,[2] and became increasingly worse. While a reasonable person might find that these remotely similar injuries sufficiently connected as to put one on notice of a potentially actionable injury, an equally logical conclusion is that a reasonable person would have found the unique manifestations in the Illinois motel room to be indicative of an injury unrelated to Burdess's work with the Cottrell ratchet system. Cf. Giles, 475 S.W.3d at 185-86 (noting how a physician did not find that plaintiff suffered from the same lung disease as other workers involved with the at-issue chemical when he exhibited different symptoms). Choosing between these two contradictory conclusions "is a question of fact for the jury to decide." Powel, 197 S.W.3d at 585 (citation omitted).

Finally, while Burdess's Illinois motel experience is evidence of substantial damage, it is insufficient alone to put a reasonable person on notice of a potentially

---

[2]We note that this singular instance of using Cottrell's ratchet system is not specifically at issue given that Burdess's gradual onset of shoulder pain allegedly arises from the repetitive use of this system over the years. In any event, a more immediate reaction to the use of the tie-down bar would nonetheless be more indicative of a causal connection than what the evidence before us suggests.

*actionable* injury as a matter of law. As stated above, it is not enough that a reasonably prudent person in the plaintiff's shoes be on notice of sustained damage, such person must also be on notice that such damage is the result of a potentially actionable injury, or, as the district court stated in denying Cottrell's initial motion for summary judgement, "an injury for which another party could be held liable." R. Doc. 29, at 5-6. This is not to say that in another case substantial damage or manifestation of symptoms will not be sufficient to put a reasonable person on notice of a potentially actionable injury. For example, in Grady the Missouri Court of Appeals found that the plaintiff's cause of action accrued when she sustained damage, not the time of her diagnosis, because she "immediately experienced symptoms and knew what had caused them" after being exposed to the chemical at issue. 139 S.W.3d at 589. But Burdess's experience in the Illinois motel room was not an immediate reaction to a wrongful act such that the cause was immediately identifiable. As noted above, Burdess's manifestation of symptoms came almost 18 hours after he had last secured vehicles using the Cottrell ratchet system.

To be clear, we cannot as a matter of law conclude that Burdess's potentially actionable injury was capable of ascertainment no earlier than when he received his diagnosis. There are certainly facts, as discussed above, that suggest that a causal connection between Burdess's bilateral shoulder impingement syndrome and his use of Cottrell's tie-down ratchet system was capable of ascertainment prior to then. We hold only that, when reviewing all of the facts in this record in the light most favorable to Burdess, the law does not compel us to find, as a matter of law, that this causal connection was capable of ascertainment in Burdess's Illinois motel room on April 5, 2013. Levitt, 914 F.3d at 1175 ("[A]lthough it may be the case that a reasonably prudent person in [plaintiff's] position would have been on notice of a potentially actionable injury . . . , this conclusion does not follow as a matter of law." (second and third alterations in original) (quoting Giles, 475 S.W.3d at 193)). Because "contradictory or different conclusions" may be drawn from the evidence, "it is a question of fact for the jury to decide." Powel, 197 S.W.3d at 585 (citation omitted).

## III.

As a final matter, Cottrell asks this Court to affirm the grant of summary judgment on a myriad of other bases. See Adam & Eve Jonesboro, LLC v. Perrin, 933 F.3d 951, 958 (8th Cir. 2019) ("[W]e may affirm a judgment on any ground supported by the record."). However, Cottrell has not properly presented any developed argument beyond the cursory assertions proffered in its briefing, nor were the matters discussed by the district court because it found Burdess's and his wife's claims time-barred. Accordingly, we remand so that the district court can address these arguments in the first instance. See United States v. Reed, 972 F.3d 946, 955 n.5 (8th Cir. 2020) (declining to address claims that were not meaningfully developed or argued); GEICO Cas. Co. v. Isaacson, 932 F.3d 721, 724 (8th Cir 2019) (noting that this Court ordinarily remands an unaddressed matter to give the district court an opportunity to rule in the first instance).

## IV.

For the foregoing reasons, we reverse the district court's grant of summary judgment and remand for further proceedings consistent with this opinion.

_____